**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Plaintiff,**

**v.**

**Claudia TIMBO, Executrix of the Estate of John F. Smith, Lois M. Smith, and William J. Smith, a minor, Defendants.**

**Civil Action No. 97–5701(MLC).**

United States District Court, D. New Jersey.

Sept. 30, 1999.

Kristen M. Zollers, Landis, Kerns & Onorato, Lansdale, PA, for Claudia Timbo and William J. Smith.

Nola Trustan, Toms River, NJ, for Lois M. Smith.

## MEMORANDUM OPINION

COOPER, District Judge.

This suit involves the determination of the beneficiary of a group life insurance policy and a stock savings and investment plan. This Court has jurisdiction to hear the matter pursuant to 28 U.S.C. §§ 1331 and 1332. The case was tried before the Court without a jury on May 14, 1999 and June 15, 1999. The Court provides the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a). We will award: (1) the proceeds of the decedent John F. Smith's life insurance policy, paid into this Court, to Lois M. Smith and (2) the proceeds of the decedent's savings and stock investment plan to the Estate of John F. Smith. Pursuant to Federal Rule of Civil Procedure 58, we will enter judgment accordingly.

### PROCEDURAL HISTORY

John Hancock Mutual Life Insurance Company ("John Hancock") filed this interpleader action on November 12, 1997 to determine the proper beneficiary of the proceeds of decedent John F. Smith's group life insurance policy issued to the Ford Motor Company and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* William J. Smith ("William") and the Estate of John F. Smith ("Estate") answered John Hancock's Complaint and cross claimed, alleging the following: (1) William is the proper beneficiary of the life insurance proceeds because a 1979 divorce decree required the decedent to name him as an irrevocable beneficiary of the proceeds of decedent's life insurance policy and (2) Lois M. Smith ("Lois") waived any claim to the decedent's assets through the 1996 divorce decree terminating her marriage to the decedent. Lois answered and cross claimed, contending that she is the proper beneficiary of the proceeds of dece-

dent's life insurance policy, and claiming the assets accumulated in decedent's savings and stock investment plan through Ford Motor Company ("SSIP") by virtue of her designation as beneficiary of the life insurance policy at the time of decedent's death. (Pretrial Order entered 5–27–98 ¶¶ 4–5.) By consent judgment entered January 21, 1998, this Court dismissed John Hancock as a party to this case, contingent upon payment into Court of the proceeds of the life insurance policy. John Hancock paid $27,988.44 into Court on February 18, 1998. This Court held a nonjury trial to resolve the crossclaims on May 14, 1999 and June 15, 1999. The Court hereby issues its Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

John F. Smith ("decedent"), died on November 3, 1996, having retired in the late 1970's from his lifelong employment with Ford Motor Company ("Ford"). At the time of his death there were two assets in his Ford ERISA plan: (1) a group life insurance policy issued by John Hancock, with death benefits payable in the amount of $27,988.44; and (2) the assets in his SSIP, consisting primarily of Ford stock, having an approximate market value of $145,000 at the time of death. As of February 18, 1998 the life insurance benefits totaling $27,988.44 were paid into this Court for deposit in its interest-bearing trust account, and John Hancock was granted a discharge in interpleader. The SSIP account remains under the management of Ford until disposition of this case.

Decedent was married twice in the course of his life. The first marriage was to Barbara E. Smith on December 21, 1950. (E–3 at 1.) The three children of that marriage are (in order of birth) defendant Claudia Timbo, executrix of the Estate ("Claudia"), Raymond J. Smith ("Raymond"), and William. They are the beneficiaries of the Estate. (E–1.) The marriage of decedent and Barbara Smith

ended with a divorce decree entered on November 27, 1979 ("the first divorce decree"). (E–3.) At that time the two older children were emancipated and William was age thirteen. The first divorce decree provided in pertinent part:

[T]he defendant [husband] will maintain the present life insurance policies which he possesses: one being a group policy issued by John Hancock Insurance Company in the approximate face amount of $20,000.00, which defendant shall maintain so long as it is available to him at his place of employment; the other issued by Prudential Insurance Company in the approximate face amount of $5,000.00. The infant child of the marriage shall be named as irrevocable beneficiary on said policies.

(E–3 at 4.) The Prudential policy referred to in that provision is not in issue in this case. Nor does Barbara E. Smith assert any claim herein.

Decedent was married to defendant Lois M. Smith on July 23, 1985. (E–5 at 1.) Lois has a daughter, Deborah Malkenson ("Deborah"), from a prior marriage. No children were born to the marriage of decedent and Lois. Their marriage ended in a divorce decree entered on August 30, 1996. (*Id.*)

1. Counsel for William and the Estate explained at trial that the Smith siblings have waived any conflict in being jointly represented in this case.

2. References to "E" denote trial exhibits marked into evidence. Those are as follows:

E–1: Last Will of John F. Smith;
E–2: John Hancock life insurance policy beneficiary designation dated February 9, 1979;
E–3: Final Judgment of Divorce dated November 27, 1979;
E–4: John Hancock life insurance policy beneficiary designation dated June 6, 1988;
E–5: Final Judgment of Divorce dated August 30, 1996;
E–6: Transcript of Judgment of Divorce dated June 4, 1996;
E–7: Ford's Employee Handbook, page 107;

The witnesses testifying at trial were as follows: the Smith siblings Claudia, Raymond and William;[1] Lois M. Smith and her daughter Deborah; Brian F. O'Malley, Esq., who represented decedent in the divorce from Lois; and a fact witness presented by Lois named Sallie Sheasley.[2] Most of the historical facts are undisputed, and those are set forth in this section of the opinion. To the degree that any disputed facts are material to resolution of the issues, we have discussed those in the following section.

Decedent worked at the Ford Motor Company plant in Edison, New Jersey from age 17 until his retirement in the late 1970's. He had a sixth grade education. At the time of his retirement decedent was residing in Montvale, New Jersey. He met Lois in 1977, and they dated from that time until they married in 1985. Lois works as a housekeeper. She went through the sixth grade in elementary school, then was placed in special education classes until she quit school at age 16. In or about 1984, decedent moved to Toms River, New Jersey (near his son Raymond), where he bought a home in a retirement community which had a mini-mall and other amenities for the residents.

E–8: Case Information Statement dated September 28, 1995;
E–9: Consent Order dated August 17, 1994;
E–10: Consent Order dated February 24, 1995;
E–11: Community Medical Center Records regarding John F. Smith's September 1, 1993 admission to hospital; and
E–12: Community Medical Center Records regarding John F. Smith's September 23, 1993 admission to hospital.

The parties submitted trial briefs: Trial Memorandum on behalf of Claudia Timbo, Executrix of the Estate of John F. Smith, and William J. Smith ("William's Br."); and Trial Memorandum on behalf of Lois M. Smith ("Lois's Br.") We have also reviewed the proposed findings of fact submitted by each party, as well as the pleadings· and the Final Pretrial Order entered herein on 5–27–98 ("Pretrial Order").

He and Lois resided in that home after they were married in July, 1985.

Lois owned a home in Garfield, New Jersey from approximately 1987 through 1994. She and decedent separated several times before they eventually divorced. During those periods Lois typically returned to her own home in Garfield, which was nearby the home of her daughter and her aged mother. After she sold that house she moved to another residence in the same adult community as the home of decedent.

Decedent made a will dated January 8, 1987. At that time he and Lois had been married for 1 ½ years and they were separated. In that will he bequeathed his entire estate (except small specific bequests not here relevant) to his three adult children. He expressly left Lois out of the will, stating "I specifically make no provision for my wife, LOIS M. SMITH." (E–1 ¶ 7.) On June 6, 1988, decedent went in person to the Ford Group Office and changed the beneficiary designation for his John Hancock life insurance policy from William to Lois. (E–4.) At that time they were reconciled and again living together. When decedent executed that change of beneficiary William was 22 years of age and working at the New Jersey shore, having completed high school at age 17–18 and not gone to college. It is undisputed that there is no record that decedent ever made any written beneficiary designation for his SSIP account assets.

Decedent was diagnosed with cancer in September, 1993. He also suffered from a disabling heart condition and emphysema. Thereafter he underwent several hospitalizations as well as periods of outpatient treatment. He died at home on November 3, 1996.[3] William was residing with him at that time, but had not lived with decedent while he and Lois were married and living together.

Decedent filed for divorce from Lois in December, 1993. A formal separation order was entered by consent on August 19, 1994 which addressed *pendente lite* property and support issues and provided that the case would be placed on the inactive list until August 1, 1995. The matter was reached for trial on June 4, 1996, and a settlement was reached which was placed on the record that day. Both parties were represented by counsel at that hearing.[4] Counsel for decedent summarized the terms of the settlement at the divorce hearing, and both decedent and Lois stated their consent. (E–6 at 3–11.) Counsel for decedent subsequently submitted to the state court a proposed divorce judgment, without objection by counsel for Lois, which was entered by the court on August 30, 1996 ("the second divorce decree").[5]

Lois claims in this case to be entitled to the proceeds of the John Hancock policy, based upon the fact that she is the named beneficiary. William claims that he is enti-

---

**3.** There was a dispute in the trial evidence as to which persons provided care and services to decedent during his final illness, and to what extent. The parties also dispute the quality of relationship, if any, that decedent and Lois had between themselves after the divorce became final. To the degree that those factual disputes are material, we have addressed them *infra*.

**4.** Brian O'Malley, Esq. represented decedent and Christine Matus, Esq. represented Lois in those proceedings. (E–6 at 1.)

**5.** The second divorce decree provided in pertinent part as follows:

    3. The Plaintiff [husband] waives any and all claims he has for equitable distribution

of the proceeds of the sale of the Defendant's [wife] house in Garfield, New Jersey; her bank accounts; her personalty; her real property acquired with the proceeds of the sale of her Garfield, N.J. property, her automobile.

    4. The Defendant [wife] waives all claims she has for equitable distribution of the Plaintiff's real property at 29 San Salvador Street, Berkley Township, New Jersey; his stocks and bank accounts; his personalty and his automobile.

    5. Neither party shall be obligated to provide for the health care of the other.

(E–5.)

tled to be the beneficiary of that insurance pursuant to the terms of the first divorce decree, which provided that he was to be the "irrevocable beneficiary" of such insurance. Lois and William, respectively, each contend that they are also the rightful owner of the assets in the SSIP account. Those contentions are based on the explanation of the SSIP beneficiary designation in Ford's Employee Handbook, which is quoted and discussed below. The Estate concurs with William, taking the position that William should be awarded the full amount of both assets. For the following reasons, we disagree with both sides and conclude that Lois is entitled to the insurance proceeds and that the SSIP assets are payable to the Estate.

## CONCLUSIONS OF LAW

The parties agree that ERISA preempts the application of state law to both plans.[6] (William's Br. at 2; Lois's Br. at 2.) However, they disagree with respect to the effect of ERISA preemption in this case. Lois argues that the plan beneficiary designation must prevail. (Lois's Br. at 2). Alternatively, Lois argues that she is the proper beneficiary under federal common law. (*Id.* at 2–10.) The Estate and William argue that federal common law should be applied and that William is the proper beneficiary by virtue of the first divorce decree. (William's Br. at 2–5.)

6. By its terms, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute, except state laws that regulate insurance, banking, or securities. 29 U.S.C. §§ 1144(a), 1144(b)(2)(A).

7. While neither party cited the following case, we note that the Seventh Circuit decided a dispute over the beneficiary of a Ford Motor Company SSIP in *MacLean v. Ford Motor Co.*, 831 F.2d 723 (7th Cir.1987). In *MacLean*, the Seventh Circuit pointed out that the beneficiary designation provisions under the SSIP were amended in 1983. *See id.* at 724, n. 1. Apparently, prior to 1983, designations of beneficiaries under the SSIP and under Ford-sponsored life insurance policies were independent. *Id.*

We turn first to the argument that William, as an irrevocable beneficiary of the life insurance proceeds under the first divorce decree, is the beneficiary of both the insurance policy and the SSIP. As a preliminary matter, we note that the first divorce decree clearly did not require that William be named irrevocable beneficiary of the SSIP. It merely states that William shall be named the irrevocable beneficiary of one John Hancock policy and one Prudential policy. (E–3 at 4.) Thus, the decedent could have named any beneficiary of the SSIP without violating the 1979 divorce decree.[7]

■ We find no basis to equitably assign the insurance policy proceeds in favor of William, who was already an emancipated adult when decedent removed him as the insurance beneficiary and designated Lois. It was unclear whether divorce decrees could effectively convey a beneficiary interest in an ERISA plan when the first divorce decree was entered. *See generally Dial v. NFL Player Supplemental Disability Plan*, 174 F.3d 606, 610 (5th Cir. 1999) (discussing evolution of ERISA's anti-alienation and anti-assignment clauses). The Retirement Equity Act of 1984, Pub.L. No. 98–397, enacted in August 1984 and effective January 1, 1985, amended ERISA to provide that ERISA benefits may be alienated by means of a Qualified Domestic Relations Order ("QDRO").[8] A

8. The term "qualified domestic relations order" means a domestic relations order—

(I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
(II) ... only if such order clearly specifies—
(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

divorce decree entered prior to the effective date of the Retirement Equity Act can be treated as a QDRO. *Samaroo v. Samaroo*, 193 F.3d 185, 186 (3d Cir.1999). Accordingly, we find that the first divorce decree is a QDRO and look to state law for guidance.

It is true that courts will enforce an equitable assignment of insurance proceeds that is part of a child support order. *See Travelers Ins. Co. v. Johnson*, 579 F.Supp. 1457 (D.N.J.1984) (enforcing minor child's equitable interest in life insurance proceeds where father failed to designate child as beneficiary of life insurance policy in accordance with divorce decree); *Raynor v. Raynor*, 319 N.J.Super. 591, 726 A.2d 280 (App.Div.1999). However, courts may only recognize an equitable assignment where the insurance proceeds secure a child support obligation. *See Grotsky v. Grotsky*, 58 N.J. 354, 361, 277 A.2d 535, 540 (1971) ("[T]he court may enter a support order for minor children to survive their father's death and may direct the father to maintain his insurance, naming the minor children as beneficiaries, for the purpose of securing due fulfillment of the support order during their minority.") We recognize that although William is an adult, "it is not unusual for a parent to support a child through his or her 20's in order for all avenues of higher education to be explored." *Baldino v. Baldino*, 241 N.J.Super. 414, 417, 575 A.2d 66 (Ch.Div. 1990). Courts must consider all relevant factors in determining whether a parent may be legally obligated to provide for an adult child's education. *Newburgh v. Arrigo*, 88 N.J. 529, 545, 443 A.2d 1031 (1982) *modified by Heuer v. Heuer*, 152 N.J. 226,

704 A.2d 913 (1998). The relevant equitable factors include:

(1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.

*Johnson v. Bradbury*, 233 N.J.Super. 129, 136, 558 A.2d 61 (App.Div.1989) (citing *Newburgh*, 88 N.J. at 545, 443 A.2d 1031). Further, the child must disclose all relevant information pertaining to his ability to meet his financial needs. *White v. White*, 313 N.J.Super. 637, 713 A.2d 583 (Ch.Div. 1998).

(iii) the number of payments or period to which such order applies, and
(iv) each plan to which such order applies, and
[ (III) ] (i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,
(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.
29 U.S.C. § 1056.

■ William testified that he enrolled in professional cooking school which cost approximately $40,000 following his father's death. William's testimony suggests his belief that the life insurance should be paid to him pursuant to his father's obligation to provide for his college education at a state university under the 1979 divorce decree.[9] However, we find that the evidence does not sufficiently favor William's position, based upon our evaluation of the applicable factors.[10] Therefore, we hold that William did not meet his burden of proof under *Newburgh* that at the time of his death the decedent was obligated to provide for William's education and that the decedent's life insurance policy was necessary to secure that support. Consequently, we reject William's equitable claim to the proceeds of his father's life insurance policy.

■ We turn next to the argument that Lois waived her interest in the life insurance proceeds and SSIP. Because the Third Circuit has not had occasion to address whether a former spouse may waive her beneficiary interest in an employee benefit plan, we look to other courts for direction. The majority of the circuits that have ruled on this issue have upheld waivers of benefits from ERISA pension plans in divorce settlements by the beneficiaries under federal common law.[11] *See, e.g., Estate of Altobelli v. International Bus. Machs. Corp.,* 77 F.3d 78, 80 (4th Cir.1996) ("The issue [of] whether a divorced spouse, who was the designated beneficiary under her ex-husband's ERISA plan, effectively waived her benefits via a marital settlement agreement [may be ... ] resolved by developing federal common law."); *Mohamed v. Kerr,* 53 F.3d 911, 914 (8th Cir.1995) ("Thus, under federal common law, a settlement entered into pursuant to a judgment of dissolution may divest a former spouse of beneficiary rights...."); *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1326 (5th Cir.1994) (federal common law recognizes beneficiary's ability to waive benefits in divorce decree

**9.** The first divorce decree provided:

IT IS FURTHER ORDERED AND ADJUDGED that the defendant will be responsible to pay one-half of the college costs of William Smith at a State University that he may attend.

(E–3 at 3.)

**10.** William was 22 years old in 1988 when his father replaced him as beneficiary of the John Hancock policy and designated Lois. William was therefore at least 32 when he attended cooking school, following his father's death in November, 1997. There is no evidence that he requested support from his father for such an endeavor during his father's lifetime, or that his father offered him any money for that purpose.

The parties stipulated at trial that there was no money owed to Barbara under the divorce agreement at or after the time William graduated from high school. If there had been money owed to William for his higher education during that period, it would be expected that Barbara would have moved to enforce that obligation against decedent. There is no evidence that she did.

It is apparent from the record that William and his father enjoyed a very close relationship. Decedent was awarded custody of William in the divorce from Barbara, when William was 13, and William was again residing with decedent at the time of his death. Yet during none of those years did decedent finance any education for William.

The only evidence of decedent's intention regarding William's education was Claudia's testimony that during his lifetime decedent expressed his desire that part of his estate be used for William to go to cooking school. Such evidence could be probative of testamentary intent, which is not in issue in this case. However, that same evidence also supports the conclusion that decedent did not regard himself as having any legal obligation to provide educational support after William had become emancipated. Nor did William or his mother Barbara ever make that demand upon decedent. Thus there is no evidentiary support for a conclusion that decedent had such an obligation.

**11.** The minority view holds that a clear beneficiary designation under the plan may not be disturbed. *See, e.g., Metropolitan Life Ins. Co. v. Pressley,* 82 F.3d 126 (6th Cir.1996); *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990) ("The designation of beneficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue.").

by specific terms extinguishing the interest); *see also Metropolitan Life Ins. Co. v. Hanslip,* 939 F.2d 904, 907 (10th Cir.1991); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693–94 (8th Cir.1989); *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 280 (7th Cir.1990) (en banc).

We adopt the majority view and will apply it to the case at bar, because we believe the Third Circuit would follow the majority on this issue.[12] The Third Circuit Court of Appeals has held that federal courts should fashion federal common law rules to fill interstices in the language of ERISA. *Heasley v. Belden & Blake Corp.,* 2 F.3d 1249, 1257 n. 8 (3d Cir.1993). Where a state law is consistent with the purposes of ERISA it is appropriate to adopt it as federal common law. *Id.* at 1258. The courts applying federal common law to resolve beneficiary disputes have recognized that ERISA provides no guidance as to what acts constitute a valid waiver of benefits. *See Fox Valley,* 897 F.2d at 281 (noting that ERISA does not speak as to what constitutes an effective waiver). The majority of courts utilize the federal common law to fill this recognized gap in ERISA. *Brandon,* 18 F.3d at 1325; *McMillan,* 913 F.2d at 311. Because ERISA is silent on the issue of whether a beneficiary designation can be superseded by a divorce decree, we believe the Third Circuit would look to the existing body of federal common law.

Federal common law holds that in order for a plan beneficiary to waive his or her benefits through a divorce decree, the waiver must specifically identify the benefits being waived. *See, e.g., Altobelli,* 77 F.3d at 81 (finding that "each party clearly intended to relinquish all interests in the pension plans of the other"); *Mohamed,* 53 F.3d at 915 ("The question remains for us to decide ... whether the Kerr settlement specifically divested the spouse's rights as a beneficiary under the policy.") (quotation omitted); *Brandon,* 18 F.3d at 1326 (asking "whether there was a valid, specific waiver of benefits in the divorce decree to which the court, under the auspices of federal common law, could give effect"); *McMillan,* 913 F.2d at 312 ("The only cases which have applied [federal common law] have required that, to be effective, the waiver must specifically refer to the spouse's rights as beneficiary in an ERISA plan."); *Lyman Lumber,* 877 F.2d at 693 ("A number of courts have held that the spouse's rights as a beneficiary are extinguished only by terms specifically divesting the spouse's right as beneficiary under the policy or plan."); *Fox Valley,* 897 F.2d at 281 (same).

The Fourth Circuit found in *Altobelli* that the waiver provision in a marital settlement agreement, which was incorporated into the divorce decree, demonstrated that the parties "clearly intended to relinquish all interests in the pension plans of

12. In the case *sub judice,* the parties concur that both the John Hancock plan beneficiary designation and the SSIP beneficiary designation are preempted by ERISA. We will analyze the beneficiary designations accordingly. We note, however, that the Supreme Court has recently recognized that ERISA preemption must have limits when it enters areas traditionally left to state regulation. *See De Buono v. NYSA–ILA Medical and Clinical Svcs. Fund,* 520 U.S. 806, 813–14, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (holding that ERISA does not preempt a New York state law imposing a tax on hospitals that indirectly taxes ERISA plans). Under this more limited approach, an action intended only to enforce individual rights against a beneficiary has not

been barred by ERISA preemption. *Emard v. Hughes Aircraft Co.,* 153 F.3d 949 (9th Cir. 1998). No ERISA provision expressly governs disputes between claimants to insurance proceeds. *See Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 14 (2d Cir.1993) (ERISA is "silent on the matter of which party shall be deemed beneficiary among disputing claimants.") A dispute concerning the ultimate ownership of the proceeds of a plan may be decided without reference to the terms of the plan or the provisions of ERISA, because there is no dispute regarding the amount or nature of the benefit or whether the benefit is properly payable. We reach the same result whether or not state law is preempted by ERISA in this instance. *See infra.*

the other." *Id.* at 81. The waiver provision at issue stated:

All of the following property is hereafter the sole and exclusive property of the Husband, and the Wife hereby waives and transfers to the Husband any interest she may have in the property:

\* \* \*

(g) Husband's IBM pension and other deferred compensation plans, if any.

*Id.* at 80. The agreement also contained reciprocal releases made by the husband. *Id.* Given the specificity of the waiver, the court denied the wife any right to her former husband's benefits.

The Sixth Circuit Court of Appeals examined, in *dicta*, language in a divorce settlement and determined that it was not sufficiently specific to be a valid waiver. *McMillan*, 913 F.2d at 312, n. 2. The provision stated:

Each party hereby waives, relinquishes and forever releases the other party of any and all claims he or she may have against the other for dower, curtesy, alimony, maintenance, property settlement, and all other claims of any kind and nature . . .; it being understood and mutually agreed between the parties that this Settlement Agreement represents a full, final and complete settlement of any and all claims of every kind, character and description which the other party may have against the other.

*Id.* The court observed, "[t]he waiver provision in [wife's] divorce settlement, however emphatic, does not specifically refer to her interest as beneficiary of these ERISA plans." *Id.* at 312.

Similarly, the Eighth Circuit found no waiver in a divorce decree in *Lyman Lumber* which contained the following clause: "[husband] shall have as his own, free of any interest of [wife], his interest in the profit sharing plan of his employer." 877 F.2d at 693. Although the clause referred to the profit-sharing plan specifically, the court held that it was nonetheless an inadequate waiver, because "[i]t did not, however, specifically refer to and modify the beneficiary interest." *Id.* at 693–94.

The Seventh Circuit considered this issue in *Fox Valley*, finding a valid waiver in a divorce settlement provision stating that the wife waived "any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party." *Id.* at 277. The court found that the waiver was an explicit, mutual waiver of each party's rights to the other's pension plan. *Id.* at 280. The *Fox Valley* court distinguished the *Lyman Lumber* decision as follows:

The *Lyman* court found that the general wording of the divorce decree did not specifically refer to and modify the beneficiary interest of the participant's ex-wife. The Eighth Circuit therefore affirmed the district court's award of benefits to the primary beneficiary. . . . Unlike the factual setting in *Lyman*, [wife] and [husband-participant] in the present case signed a voluntary property settlement agreement that included an explicit mutual waiver of any rights each might have had in the other's pension plan.

*Id.* at 280; *see also Brandon*, 18 F.3d at 1327 ("We follow the courts in *Fox Valley* and *Lyman Lumber* by requiring under federal common law that any waiver of ERISA benefits be explicit. . . .").

We find that Lois did not waive her interest in the decedent's John Hancock life insurance policy, in light of these principles. There is no explicit waiver of insurance beneficiary rights in the divorce decree. The divorce decree, prepared by decedent's then counsel, does not even mention insurance. *See* n. 5 *supra.* Life insurance was, however, mentioned by decedent's counsel at the hearing placing the

settlement agreement on the record.[13] We find that decedent's counsel's statement summarizing his understanding of the divorce settlement—"[n]either party will henceforth have any obligation to each other by way of provision of health care and health insurance, life insurance, or anything of that nature"—is not an explicit waiver of Lois's interest in the proceeds of the John Hancock policy. (E–6 at 4.) Counsel's statement could mean that neither party was obligated to pay premiums on policies insuring the other's life; it could also mean that neither party was *obliged* to maintain life insurance payable to the other. It does not specifically refer to a waiver of Lois's beneficiary interest in a then-existing policy which, as we have seen, was *in fact* continued in force until the time of his death.[14] *See Lyman Lumber,* 877 F.2d at 693.

Our finding that Lois did not waive her interest in the proceeds of the John Hancock policy is bolstered by Lois's testimony that she did not knowingly waive her interest in the life insurance policy. Lois further asserts that throughout the post-divorce period decedent continued to assure her that she would "be taken care of" at his death. She was aware that he had changed the insurance beneficiary designation to her during their marriage. She understood him to mean that he intentionally left that designation in her name so that she would get the John Hancock insurance. We find this to be corroborative evidence tending to explain why decedent did not eliminate Lois as the beneficiary of that insurance during his lifetime.[15] We are also guided by recent decisions of our Court of Appeals holding that a waiver of rights between parties to a dispute must be express and specific. *See Torres v.*

**13.** Mr. O'Malley, counsel for decedent in the divorce action between decedent and Lois, stated the terms of the settlement on the record on June 4, 1996 as follows:

First, there is to be a mutual waiver of alimony.

Second, with respect to equitable distribution, the husband agrees to pay to the wife the sum of $3,120 as a lump sum equitable distribution payment, which payment is to be accomplished within 15 days from today's date.

Third, with respect to all other claims for equitable distribution which includes certain claims that the husband has asserted against the proceeds of the sale of a piece of real property in Garfield [and] against a co-op which was purchased by the wife with those proceeds and against any other asset presently owned and titled in the name of the wife and in the possession of the wife; all of those claims will be waived by the husband.

In addition, the wife is waiving any and all claims that she might have against the husband's various items of pre-marital property, including any real estate, shares of stock, automobiles that she might have owned at the time that they were married.

With respect to assets acquired after their separation, each party has an automobile that they've acquired after separation, and each is going to keep the automobile presently in their possession. Each will waive claims as to those automobiles.

Neither party will henceforth have any obligation to each other by way of provision of health care and health insurance, life insurance, or anything of that nature. Each party will be responsible for the payment of their own counsel fees.

That, Your Honor, is the sum and substance of the agreement as I understand it.

THE COURT: All right. Any additions or changes?

MS. MATUS [counsel for Lois]: No, Your Honor.

(E–6 at 3–4.)

**14.** Mr. O'Malley testified at the trial in this case that he was never informed by decedent that decedent had any life insurance with John Hancock, or that Lois was the named beneficiary. The Case Information Statement completed and signed by decedent in that divorce action does not list such a policy among decedent's identified assets. (E–8 at 6.)

**15.** This conclusion is not in conflict with our further finding that as to testamentary intent, it is clear that decedent intended his estate to go to his children and grandchildren. Although decedent may not have been aware of the difference between property passing through an estate and life insurance benefits, life insurance benefits are generally not included as part of the estate for inheritance tax purposes. 26 U.S.C. § 2042, N.J. Stat. Ann. 54:34–4(f).

*Metropolitan Life Ins. Co.,* 189 F.3d 331, 333–335 (3d Cir.1999) (holding that waiver of right to claim attorneys' fees after settlement must be expressly stated in settlement agreement or dismissal order); and *Carter v. Exxon Co. USA,* 177 F.3d 197, 204 (3d Cir.1999) (reiterating rule that waiver of rights in breach of contract dispute must be express and may not be implied).[16] Accordingly, we will award the proceeds of the John Hancock policy to Lois.

We find, however, that Lois did waive any interest she may have had in the SSIP. The divorce decree states that Lois waived her interest in the decedent's stocks.[17] (*See* n. 5.) According to the terms of the SSIP, the decedent could have elected to withdraw the Ford Motor Company stocks beneficially owned by him under the plan at any time. (E–7.) It appears that decedent may indeed have withdrawn stocks from the plan to pay a property settlement to his first wife. (E–3 at 2.) Further, Lois acknowledged in her testimony that she always believed decedent's "stock" included the stock held in the SSIP, and that decedent did not at any time indicate to her any intention that she was to receive any of his stock. Claudia Timbo's testimony confirmed that the decedent referred to the stocks he purchased and the SSIP collectively as his stock.

Thus, we hold that when Lois waived any interest she might have had in decedent's stocks in the 1996 divorce decree, Lois knowingly and explicitly waived any interest in the SSIP.

Because Lois waived her interest in the SSIP, we will award the proceeds of the SSIP to the decedent's Estate. The explanation of the SSIP beneficiary designation from Ford's Employee Handbook provides:

- If you're married at the time of your death, assets in your account will be distributed to your surviving spouse, unless you designate someone else as your beneficiary. Your spouse must consent to this alternative beneficiary designation in writing, as required by law, and your spouse's consent must be witnessed by a notary public.

- If you're not married and you're covered under the Company's basic group term life insurance plan at the time of your death, assets in your account will be distributed to the person(s) entitled to receive your benefits under such plan, unless you designate someone else. You may name a different beneficiary for this plan by filing an alternative beneficiary designation form with the Company.

- If you're not married and you're not covered under the Company's group

16. Assuming *arguendo* that we adopted state law as federal common law in this instance, we credit Lois's testimony (as well as the testimony of Sallie Sheasley) that Lois and the decedent remained friends after their divorce. We thus find that evidence sufficient to overcome any presumption that the property settlement revoked the insurance beneficiary designation. *See Vasconi v. Guardian Life Ins. Co. of Am.,* 124 N.J. 338, 347–50 590 A.2d 1161, 1166–68 (1991) (suggesting that a divorce decree may create a presumption that a life insurance beneficiary designation is revoked which is rebuttable by evidence that the couple shared a lingering affection after divorce).

There was a sharp conflict in the testimony presented by the parties on the subject of the nature and quality of the relationship between decedent and Lois during their final separation and after their divorce. Our evaluation

of that testimony leads us to conclude that Lois is credible in asserting that they continued to have a relationship of friendship, in which she provided assistance and companionship to him during the entire period until he died.

17. It is irrelevant whether or not the second divorce decree qualifies as a QDRO. The ERISA anti-alienation provision, 29 U.S.C. § 1056, applies only to transfers of interests of plan participants outside the plan and not to transfers of interests of plan beneficiaries. *Fox Valley,* 897 F.2d at 279. Thus, *Ross v. Ross,* 308 N.J.Super. 132, 705 A.2d 784 (App. Div.1998), cited by Lois, is inapposite. The Appellate Division's decision in *Ross* related to a transfer where it found that a QDRO was required by ERISA. *Id.,* 308 N.J.Super. at 158–59, 705 A.2d 784.

term life insurance plan at the time of your death, assets in your account will be distributed to your estate, unless you designate someone. You may name a beneficiary for this plan by filing an alternative beneficiary designation form with the Company.

(E–7.) We find that the second paragraph of this quoted language factually applies to decedent's situation at the time of his death, in that he was unmarried and he was covered under the group life insurance policy. However, we further find that because Lois waived her interest in the SSIP, that waiver created an absence of beneficiary designation under the quoted provisions. The third quoted paragraph expresses the clear intent that the SSIP is payable to the estate of the participant if the decedent is unmarried and has no designated beneficiary. Therefore we interpret the SSIP assets to be governed by the third paragraph of the quoted language and will award the SSIP to the Estate.

### CONCLUSION

For the reasons stated herein, the Court will enter Judgment (1) in favor of Lois Smith on the life insurance proceeds and (2) in favor of Claudia Timbo, Executrix of the Estate of John F. Smith, on the stock savings and investment plan. An appropriate Order of Judgment accompanies this Opinion.

### ORDER

This matter coming before the Court for trial in the absence of a jury; and the Court having considered the trial memoranda submitted by the parties; and the Court having heard testimony on May 14, 1999 and June 15, 1999; and the Court having reviewed the documents entered evidence by the parties; and for good cause shown;

**IT IS THEREFORE** on this day of September, 1999, **ORDERED** that **JUDGMENT** be and hereby is entered in favor of Lois M. Smith on the decedent's John

Hancock Mutual Life Insurance Company life insurance policy proceeds;

**IT IS FURTHER ORDERED** that judgment be and hereby is entered in favor of the Estate of John F. Smith on the decedent's Stock Savings and Insurance Plan;

**IT IS FURTHER ORDERED** that the Clerk of the Court will disburse the $27,-988.44 deposited with this Court on February 18, 1998 by John Hancock Mutual Life Insurance Company, plus any interest accrued thereon, to Lois M. Smith; and

**IT IS FURTHER ORDERED** that each party shall bear its own costs, fees and expenses.