The **ESTATE OF Joseph ZIENOWICZ,**
**Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, and Barbara South, f/k/a Barbara Zienowicz, Defendants.**

**Civil Action No. 01–743 (WHW).**

United States District Court,
D. New Jersey.

June 13, 2002.

Frances J. Panzini–Romeo, Law Offices of Gary L. Falkin, Chatham, NJ, Plaintiff.

Laura M. Brooke, Phillips & Brooke, P.C., Bensalem, PA, Defendant.

## OPINION

WALLS, District Judge.

In a dispute over life insurance benefits, Plaintiff the Estate of Joseph J. Zienowicz ("the Estate") moves for summary judgment and Defendant Barbara South ("South") cross-moves for summary judgment.

### FACTS AND PROCEDURAL BACKGROUND

The decedent Joseph Zienowicz ("Decedent"), an employee of General Motors ("GM"), was a participant in the GM Life and Disability Benefit Program through which he received a life insurance policy issued by Metropolitan Life Insurance Company ("Metropolitan Life"). Decedent and South were married on or about August 18, 1987. On September 4, 1987, Decedent completed a Designation of Beneficiary Form naming his then wife South as his primary beneficiary. The life insurance policy contained a provision that provided that: "an Employee may change the Beneficiary at any time by filing written notice thereof on such form with the Employer, or the Insurance Company." (Brooke Cert., Ex. 2.) South was also an employee of GM before and at the time of her marriage to the decedent. In early 1990, the parties separated and South filed for divorce on August 30, 1990 and a Final Judgment for Divorce ("Divorce Judg-

ment") was entered on January 16, 1992. South was represented by counsel but Decedent proceeded through the divorce unrepresented by counsel. The Divorce Judgment provided that "Each party shall be the sole owner of their respective retirement and employment benefits." (Brooke Cert., Ex. 4.) South testified at her deposition that she specifically requested that such a provision be included in the Divorce Judgment because she did not want the decedent to have a right to any of the money resulting from a "buy-out", a sum of money she received for relinquishing all her employment benefits upon her termination of employment with GM. This "buy-out" included her relinquishment of the life insurance policy that she received as a benefit.

Decedent died intestate on May 7, 2000 with his sole surviving heir being Joseph R. Zienowicz, his son from his first marriage. In the eight years between the finalization of the divorce and his death, Decedent made no attempt to change the beneficiary of his life insurance policy. When both Joseph R. Zienowicz, on behalf of the Estate, and South filed a Beneficiary's Life Insurance Claim with Metropolitan Life, Metropolitan Life denied the Estate's claim, recognizing South as the beneficiary. On January 12, 2001, the Estate filed a complaint for declaratory judgment in the Superior Court of New Jersey, Chancery Division, Middlesex County. Metropolitan Life filed a Notice of Removal in this Court on February 15, 2001. On April 12, 2001, a consent order granting interpleader relief to Metropolitan Life was signed by Judge Politan.[1] The proceeds of the policy at issue in the amount of $ 76,392.33 have been deposited with this Court. This matter went to arbitration and the arbitrator entered an award in favor of Plaintiff. South then filed a trial de novo on August 23, 2001.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–5, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Sound Ship Building Corp. v. Bethlehem Steel Co.*, 533 F.2d 96, 99 (3d Cir.1976), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). At the summary

---

**1.** This case was then reassigned to this Court in January of 2002.

judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Wahl v. Rexnord, Inc.,* 624 F.2d 1169, 1181 (3d Cir.1980).

## II. Analysis

The issue here is whether a divorced spouse who was designated as a beneficiary on her former spouse's life insurance policy before the divorce should receive proceeds from that policy despite a provision in the divorce judgment that provides: "[e]ach party shall be the sole owner of their respective retirement and employment benefits."

■ The life insurance policy in question funds, in whole or in part, an employee welfare benefit plan which brings it within the meaning and intent of ERISA, 29 U.S.C. § 1001 et seq. *See Metropolitan Life Insurance Company v. Pettit,* 164 F.3d 857 (4th Cir.1998) (life insurance poli-

cies qualify as employee welfare plan under ERISA); *Shiffler v. Equitable Life Assurance Society of the United States,* 838 F.2d 78, 81–82 (3d Cir.1988). Congress mandated that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. *See* 29 U.S.C. § 1144(a). Therefore, this Court must either look to ERISA itself or the federal common law interpreting ERISA in analyzing issues surrounding this plan. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ This Court must first address whether a clear beneficiary designation of an ERISA plan can be disturbed. Defendant South argues that this Court need only to look to the terms of the ERISA statute itself to determine that South is the rightful beneficiary of the life insurance policy.[2] According to Defendant, ERISA requires plan administrators to perform their obligations "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), and that the purpose of

2. Defendant also argues that because the divorce judgment does not qualify as a QDRO, this Court should adhere to the plan document.

In order to clarify the "spendthrift provisions" in ERISA that were designed to prevent unwise alienation or assignment, 29 U.S.C. § 1056(d)(1), 1984 amendments to the statute created a limited exception to the anti-alienation provisions for a state domestic relations order if it is a qualified domestic relations order ("QDRO"). *See* 29 U.S.C. § 1056(d)(3)(A). A divorce judgment can override the plain language of the plan documents and reassign employee benefits if the decree qualifies as a QDRO. QDROs are defined in 29 U.S.C. § 1056(d)(3)(B)(i):

(i) the term "qualified domestic relations order" means a domestic relations order—
(I) which creates or recognizes the existence of an alternate payee's right to, or

assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
(II) with respect to which the requirements of subparagraphs (C) and (D) are met....
It is undisputed that the divorce judgment here does not qualify as a QDRO. However, although any *assignment* of benefits should follow the QDRO requirements, QDRO requirements do not need to be followed in order to *waive* an interest in welfare benefits under ERISA. *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 279 (7th Cir.1990) (en banc); *see also Estate of Altobelli v. Int'l Bus. Machines Corp.,* 77 F.3d 78, 81 (4th Cir.1996). Assuming that this Court interprets the provision in the divorce judgment as a waiver, this waiver would not have to meet the technical requirements of a QDRO under the statute.

this directive is to ensure that all parties ascertain their rights and liabilities with certainty. ERISA benefit plans should follow "ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents." *Egelhoff v. Egelhoff,* 532 U.S. 141, 151, 121 S.Ct. 1322, 1329, 149 L.Ed.2d 264 (2001). Consequently, because the plan documents clearly name South as the beneficiary, South is the rightful beneficiary of the policy.

On the other hand, Plaintiff argues that there is no specific provision in ERISA that governs the issue of what acts constitute a valid waiver of benefits, *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 281 (7th Cir. 1990)(en banc), and that federal common law should apply in upholding waivers of benefits from ERISA plans.

The Third Circuit has not yet addressed the particular issue of whether a former spouse may waive her beneficiary interest in an ERISA plan. A number of other circuits have upheld specific waivers of benefits from ERISA plans in divorce settlements by asserting federal common law. *See e.g., Estate of Altobelli v. International Bus. Machs. Corp.,* 77 F.3d 78, 80–82 (4th Cir.1996); *Mohamed v. Kerr,* 53 F.3d 911, 914 (8th Cir.1995); *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1326 (5th Cir.1994); *Fox Valley,* 897 F.2d at 280; *see also Metropolitan Life Ins. Co. v. Hanslip,* 939 F.2d 904, 907 (10th Cir.1991); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693–94 (8th Cir.1989). The Court of Appeals for the Fourth Circuit has argued that "giving effect to a waiver contained in a domestic relations order does not burden plan administrators in a manner violative of ERISA." *Altobelli,* 77 F.3d at 81. That court further argued that Congress' provision for Qualified Domestic Relations Orders reveals that it considered the in-

tent of the parties "sufficiently important to override the policy of simplified administration." *Id.; see* 29 U.S.C. § 1056(d)(3)(G)(i). The *Altobelli* court then determined that there was a valid, specific waiver of benefits in the divorce decree that could be given effect.

The minority view adopted by the Sixth and Second Circuits is that a clear beneficiary designation under an ERISA plan may not be disturbed by a waiver in external documents. *See McMillan v. Parrott,* 913 F.2d 310 (6th Cir.1990); *Krishna v. Colgate Palmolive Co.,* 7 F.3d 11 (2d Cir. 1993). In *McMillan v. Parrott,* the Court of Appeals for the Sixth Circuit found that a divorce settlement cannot waive pension plan benefits when a clear designation has been made on the plan documents. Because of the statutory command of 29 U.S.C. § 1104(a)(1)(D) and the plan provisions outlining a specific procedure to revise the designated beneficiary, the *McMillan* court concluded that "the documents control." *McMillan,* 913 F.2d at 311. The *McMillan* court also took into account the intent of Congress that ERISA plans be "uniform in their interpretation and simple in their application." *Id.* (citing H. Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 4639, 4650). Such uniformity in application makes parties certain of their obligations. *Id.* " 'Rules requiring payment to the named beneficiary yield simple administration, avoid double liability, and ensure that beneficiaries get what's coming to them without the folderol essential under less-certain rules.' " *Id.* (quoting *Fox Valley,* 897 F.2d at 283 (Easterbrook, J., dissenting)).

In *Krishna v. Colgate Palmolive Co.,* an action arising out of conflicting claims to proceeds under a group life insurance policy, the Court of Appeals for the Second Circuit determined that it would not look

to a codicil that the district court had determined " 'left no doubt that [the decedent] intended no further personal or financial contact with [the beneficiary designated on the plan].' " *Krishna,* 7 F.3d at 13. Like our situation, the policy included a clear provision for the filing of written designations to name or change a beneficiary. Arguing that public policy called for "the uniform, uncomplicated administration of ERISA plans," the court determined that "[i]t would be counterproductive to compel the Policy administrator to look beyond those designations into varying state laws regarding wills, trusts and estates, or domestic relations to determine the proper beneficiaries of Policy distributions." *Id.* at 16.

■ This Court recognizes that in *John Hancock Mutual Life Ins. Co. v. Timbo,* 67 F.Supp.2d 413 (D.N.J.1999), a court in this district adopted the position of the majority of the circuits. However, this Court is constrained to disagree. Because Section 1104 of ERISA is clear on requiring that plan administrators follow the plan documents in making beneficiary designations and because of the strong interest in the uniform, simple administration of ERISA plans, this Court concludes that the Third Circuit would follow the Sixth and Second Circuits on this issue. *See also Fox Valley,* 897 F.2d at 284 (Easterbrook, J., dissenting) ("The ultimate objective is . . . to fulfill the congressional command embodied in the language and structure of the federal statute. Here, ERISA's command that a plan be administered in accordance with the plan's documents must be our primary concern in fashioning a waiver rule."); *Altobelli,* 77 F.3d at 82 (Wilkinson, J., dissenting) ("Strict adherence to § 1104(a)(1)(D) ensures that all interested parties, including participants, beneficiaries, and plan administrators, can identify their rights and duties with certainty, a primary objective of ERISA. . . . This in turn limits costly disputes over the effect of outside documents on the distribution of plan benefits."). In accordance with this view, this Court should not look beyond the clear beneficiary designation on the plan documents. Defendant therefore did not waive her rights to the proceeds of Decedent's life insurance policy.

■ Even if the majority view were applied, this Court finds that Defendant did not waive her beneficiary interest in Decedent's life insurance proceeds. When ERISA is a silent on an issue, courts have applied federal common law to fill in the gaps. *Heasley v. Belden & Blake Corp.,* 2 F.3d 1249, 1257 (3d Cir.1993). Federal common law may draw guidance from analogous state law. *Id.* Under federal common law, a waiver of benefits by a plan beneficiary is valid when the waiver *specifically identifies the benefits being waived.* *John Hancock,* 67 F.Supp.2d at 421; *see also Altobelli,* 77 F.3d at 80; *Mohamed,* 53 F.3d at 914; *Brandon,* 18 F.3d at 1326; *Fox Valley,* 897 F.2d at 281.

This Court finds that the divorce judgment is not a valid waiver of benefits by Defendant because it did not specifically identify the benefits being waived. Plaintiff relies heavily on a decision by the Seventh Circuit in *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d at 281. *Fox Valley* was a similar interpleader action in which the issue was whether a property settlement agreement in a divorce waived an ex-wife's interest in the decedent's pension plan policy. The alleged waiver in the agreement read: "The parties each waive any interest or claim in and to any retirement, pension, profit-sharing, and/or annuity plans from the employment of the other party." *Id.* at 277. The *Fox Valley* court determined that the designated beneficiary did waive

her interest in the pension plan through this language in the divorce settlement agreement. Plaintiff argues that the language here is similar to the *Fox Valley* language. According to Plaintiff, neither contains specific listings of items but rather categories of items.

This Court does not agree with Plaintiff's reliance on *Fox Valley*. The *Fox Valley* decree had included an explicit mutual waiver of any rights either party had in the other's pension plans. The language in the judgment here is much broader. The *Fox Valley* agreement had specifically mentioned the type of plan, "pension" to which it was referring. Here there is no mention of life insurance or insurance and no explicit *waiver* of South's rights as a beneficiary to the life insurance policy.

*John Hancock,* 67 F.Supp.2d at 413, supports Defendant South's view. The ex-wife of the decedent was the named beneficiary on the decedent's John Hancock group life insurance plan. After three years of marriage to her, the decedent had changed the beneficiary designation of his life insurance policy from his son to his then-wife. The decedent filed for divorce from his then wife and the divorce decree provided in pertinent part as follows:

> 3. The Plaintiff [husband] waives any and all claims he has for equitable distribution of the proceeds of the sale of Defendant's [wife] house in Garfield, NJ; her bank accounts; her personalty; her real property acquired with the proceeds of the sale of her Garfield, N.J. property, her automobile. 4. The Defendant [wife] waives all claims she has for equitable distribution of the Plaintiff's real property at 29 San Salvador Street, Berkley Township, New Jersey; his stocks and bank accounts; his personalty and his automobile.

*Id.* at 416, n. 4. In addition, counsel for decedent in the divorce action had stated on the record the terms of the settlement including: "Neither party will henceforth have any obligation to each other by way of provision of health care and health insurance, life insurance, or anything of that nature." *Id.* at 422, n. 13. The court found that there was no explicit waiver of insurance beneficiary rights in the divorce decree which did not even mention insurance. Although life insurance was mentioned by decedent's counsel, the court argued that the counsel's statement was "not an explicit waiver of Lois interest in the proceeds of the John Hancock policy." *Id.* at 422. According to the court:

> Counsel's statement could mean that neither party was obligated to pay premiums on policies insuring the other's life; it could also mean that neither party was obliged to maintain life insurance payable to the other. It does not specifically refer to a waiver of Lois' beneficiary's interest in a then-existing policy which, as we have seen, was in fact continued in force until the time of his death.

Here the divorce judgment provides: "Each party shall be the sole owner of their respective retirement and employment benefits." Like *Hancock,* the divorce judgment does not specifically refer to insurance or life insurance. Further, this provision does not deal specifically with the *waiver* of *beneficiary rights.*

In *Lyman Lumber Co. v. E. John Hill,* 877 F.2d 692 (8th Cir.1989), the Court of Appeals for the Eighth Circuit determined that a divorce decree that stated "[husband] shall have as his own, free of any interest of [wife], his interest in the profit-sharing plan of his employer ..." was not a waiver of the wife's beneficiary interest in profit-sharing plan proceeds. The Court reasoned that "it did not specifically

refer to and modify the beneficiary interest." *Id.* at 693–94. Like the decree in *Lyman,* the divorce judgment here gives each party his or her retirement or employment benefits free of any interest of the other; however, the judgment does not specifically refer to or modify South's beneficiary interest. There is no explicit waiver of South's interest in decedent's life insurance proceeds.

Plaintiff argues that whereas the clause in *Lyman* dealt with the *interest* of the husband, the clause here deals with the *ownership* of the retirement and employment benefits. However, this distinction is not compelling. As this Court has discussed, the ownership of the *life insurance policy* specifically is not mentioned in the subject provision. Further, the decedent's title to or ownership of the policy does not conflict with South maintaining a beneficiary interest in that policy.

The provision does not specifically identify the benefits being waived as required by federal common law. *John Hancock,* 67 F.Supp.2d 413; *see also Altobelli,* 77 F.3d at 80; *Mohamed v. Kerr,* 53 F.3d 911, 914 (8th Cir.1995); *Brandon,* 18 F.3d at 1326; *Fox Valley,* 897 F.2d at 280. And, like the circumstances of *John Hancock* and *Lyman Lumber,* the provision does not provide for the explicit waiver of beneficiary rights. This Court finds that the provision is not a valid waiver under federal common law.

### CONCLUSION

For the reasons discussed, this Court grants Defendant South's motion for summary judgment. Plaintiff the Estate's motion for summary judgment is denied.

### ORDER

In a dispute over life insurance benefits, Plaintiff, the Estate of Joseph J. Zienowicz ("the Estate"), moves for summary judgment and Defendant Barbara South ("South") cross-moves for summary judgment.

For the reasons given in the accompanying Opinion, and for good cause shown,

It is on this 13th day of June, 2002:

ORDERED that Plaintiff the Estate's motion for summary judgment is DENIED;

FURTHER ORDERED that Defendant South's motion for summary judgment is GRANTED.