**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 99-20537**

_____

**SYLVIA MANNING, EXECUTOR OF THE ESTATE OF HOUGHTON H. WEST,**

**Plaintiff-Appellant,**

**VERSUS**

**AUDREY ALLISON HAYES, ET AL,**

**Defendants,**

**AUDREY ALLISON HAYES,**

**Defendant-Appellee.**

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

May 19, 2000

Before EMILIO M. GARZA, DeMOSS, and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:

In this insurance dispute, the estate of a deceased ERISA plan participant and the decedent's ex-wife are battling over the proceeds to an ERISA plan providing life insurance benefits. The district court granted summary judgment in favor of Defendant-Appellee Audrey Allison Hayes, who is both the decedent's ex-wife and the named beneficiary under the policy. Plaintiff-Appellant

Sylvia Manning, in her capacity as executor of the estate of Houghton H. West, appeals. We affirm, although for reasons that are substantially different than those employed by the district court.

## I.

On February 15, 1993, UNUM Life Insurance Company of America issued a life insurance policy to Houghton H. West through his employer, the Amherst Securities Group. On December 22, 1994, West and Audrey Allison Hayes, in light of their impending marriage, executed a prenuptial agreement titled the Separate Property Preservation and Definition Agreement. As suggested by the title of the document, the primary purpose of the agreement was to define the substantial separate assets held by both West and Hayes, and to memorialize their agreement that neither party had or would have an equitable or legal interest in property separately owned by the other. The agreement provided that, in the event the marriage was terminated, neither party would assert any claim for such things as reimbursement, aid, comfort, or support and maintenance, and further, that neither party would assert any claim in accounts held solely in the name of the other. The agreement recognized that community property would be acquired during the marriage, primarily from earnings, and that such property would be subject to a just and equitable distribution. Finally, the agreement contained representations that each party would attempt to avoid commingling

2

community property with separate property or the proceeds of separate property owned by the other. Although the agreement included a non-exhaustive list of each of the parties assets, the agreement made no mention of employee benefits or insurance proceeds generally, or the Unum policy in particular.

Five days later, on December 27, 1994, West and Hayes were married. Almost one year later, on December 15, 1995, West voluntarily designated Hayes as the beneficiary on the Unum policy. West did not designate any alternative beneficiaries.

Six months later, on June 26, 1997, West and Hayes were divorced. There were no children born to the marriage. The final divorce decree holds that "no community property other than personal effects has been accumulated by the parties," and that such property is "awarded to the party having possession." The decree then states that the foregoing division was "made pursuant to the terms of the Separate Property Preservation and Definition Agreement." The divorce decree does not otherwise refer to the terms of that or any other agreement concerning the division of property or refer specifically to the Unum policy.

Less than one month later, on July 29, 1997, West died of pancreatic cancer. After West's death, Hayes claimed benefits as the named beneficiary of the Unum policy. West's estate disputed Hayes' entitlement to those benefits, arguing that Texas Family Code § 9.301 required the proceeds to be paid to the estate. Texas Family Code § 9.301 provides, in relevant part:

3

(a) If a decree of divorce or annulment is rendered after an insured has designated the insured's spouse as a beneficiary under a life insurance policy in force at the time of rendition, a provision in the policy in favor of the insured's former spouse is not effective unless:

(1) the decree designates the insured's former spouse as the beneficiary;

(2) the insured redesignates the former spouse as the beneficiary after rendition of the decree; or

(3) the former spouse is designated to receive the proceeds in trust for, on behalf of, or for the benefit of a dependant of either former spouse.

The dispute between West's estate and Hayes was not settled, and in February 1998, Manning sued Hayes and Unum on behalf of the estate in Texas probate court, seeking a declaratory judgment that the estate was entitled to the proceeds. Unum removed on the basis of ERISA preemption. *See* Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. Shortly thereafter, Unum interpleaded the proceeds of the policy into the registry of the district court and was dismissed, leaving only Manning, on behalf of the estate, and Hayes as parties to the suit.

In November 1998, both Manning and Hayes moved for summary judgment. Manning argued that this Court's opinion in ***Brandon v. Travelers Ins. Co.***, 18 F.3d 1321 (5th Cir. 1994), which dealt with similar facts, adopted Texas Family Code § 9.301 for purposes of the federal common law applicable in similar ERISA actions. Manning therefore argued that both ***Brandon*** and § 9.301 dictated a result in favor of the estate. Hayes argued that ***Brandon*** was both

4

wrongly decided at the time, because inconsistent with ERISA provisions governing competing claims for life insurance proceeds, and subsequently undermined by the Supreme Court's decision in *Boggs v. Boggs*, 117 S. Ct. 1754 (1996), which applied an expansive preemption analysis. Alternatively, Hayes argued that *Brandon* did not purport to adopt the rule codified in Texas Family Code § 9.301 for similar ERISA actions, and that the facts at issue in *Brandon* were distinguishable, such that *Brandon* did not dictate a result in favor of the estate in this case.

The district court considered these motions, eventually concluding that Hayes, as the named ERISA beneficiary, was entitled to the proceeds of the life insurance policy. Manning timely appealed. We review the district court's grant of summary judgment de novo. *Clift v. Clift*, __ F.3d __, 2000 WL 373981 at *2 (5th Cir. Apr. 12, 2000).

## II.

Congress passed ERISA in 1974 to establish a comprehensive federal scheme for the protection of the participants and beneficiaries of employee benefit plans. *See* 29 U.S.C. § 1001; *see also* *Pilot Life Ins. Co. v. Dedeaux*, 107 S. Ct. 1549, 1551 (1987); *Shaw v. Delta Air Lines Inc.*, 103 S. Ct. 2890, 2896 (1983). ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). A law "relates to" an employee benefit plan when the

5

law has "a connection with or reference to such a plan." **Shaw**, 103 S. Ct. at 2900. The scope of the ERISA preemption provisions is "deliberately expansive," and they are consistently construed to accomplish the congressional purpose of insuring certain minimum standards in the administration of employee benefit plans. *See* **Pilot Life Ins.**, 107 S. Ct. at 1552.

There is no doubt that Manning's claim on behalf of the estate is preempted, to the extent that it relies upon the Texas beneficiary redesignation statute. Almost every circuit court to consider the issue, including this one, has determined that a state law governing the designation of an ERISA beneficiary "relates to" the ERISA plan, and is therefore preempted. *See* **Dial v. NFL Player Supplemental Disability Plan**, 174 F.3d 606, 611 (5th Cir. 1999); **Brandon**, 18 F.3d at 1325; *see also* **Metropolitan Life Ins. Co. v. Pettit**, 164 F.3d 857, 862 (4th Cir. 1998); **Mohamed v. Kerr**, 53 F.3d 911, 913 (8th Cir. 1995); **Krishna v. Colgate Palmolive Co.**, 7 F.3d 11, 15 (2d Cir. 1993); **Metropolitan Life Ins. Co. v. Hanslip**, 939 F.2d 904, 906 (10th Cir. 1991); **Brown v. Connecticut General Life Ins. Co.**, 934 F.2d 1193, 1195 (11th Cir. 1991); **McMillan v. Parrott**, 913 F.2d 310, 311 (6th Cir. 1990); **Fox Valley & Vicinity Constr. Workers Pension Fund**, 897 F.2d 275, 278 (7th Cir. 1989). *But see* **Emard v. Hughes Aircraft Co.**, 153 F.3d 949, 961 (9th Cir. 1998) (holding that ERISA does not preempt California constructive trust

6

or community property law in a dispute between a surviving and former spouse over life insurance benefits), *cert. denied sub nom.*, 119 S. Ct. 903 (1999).

The more difficult issue is whether, having established that the state law is preempted, the federal law governing the resolution of this and similar cases may be reasonably drawn from the text of ERISA itself, or must instead be developed as a matter of federal common law. There is presently a circuit split on this issue. A majority of the circuit courts to have considered the issue have recognized that ERISA does not expressly address the circumstances, if any, in which a non-beneficiary may avoid the payment of life insurance benefits to the named beneficiary. For that reason, these courts have held that the issue is governed by federal common law. *See*, *e.g.*, **Clift**, 2000 WL 373981 at *2-3; **Brandon**, 18 F.3d at 1325-26; *see also* **Hill v. AT&T Corp.**, 125 F.3d 646, 648 (8th Cir. 1997); **Mohammed**, 53 F.3d at 913.

With respect to a former spouse's claim as a designated beneficiary, this Court has specifically held that the former spouse may waive his or her beneficiary status in a subsequent divorce decree or agreement, provided the waiver is explicit, voluntary and made in good faith. **Clift**, 2000 WL 373981 at *3; **Brandon**, 18 F.3d at 1326-27. In **Brandon**, we held that the former spouse effectively waived her beneficiary status by virtue of explicit language in the divorce decree depriving her of any

7

interest in the participant's employee benefit plans. *See **id**.* at 1323, 1327. Thus, in this Circuit, the determination of who is entitled to the proceeds of an ERISA plan providing life insurance benefits may depend upon more than merely the plan documents, and may be properly defined by reference to the federal common law of waiver as applied to the particular facts of the case.

Hayes urges a contrary rule. Hayes contends that ERISA § 1104(d) expressly requires that plan benefits be paid directly to the ERISA designated beneficiary, and further, bars any inconsistent federal common law permitting a broader inquiry. Hayes thus argues that the preemption issue is one of conflict preemption, rather than preemption under the "relates to" clause of § 1144(a).

The Sixth Circuit is the only circuit to unambiguously employ this minority approach. *See **McMillan v. Parrott***, 913 F.2d 310 (6th Cir. 1990); *see also **Metropolitan Life Ins. Co. v. Marsh***, 119 F.3d 415 (6th Cir. 1997); ***Metropolitan Life Ins. Co. v. Pressley***, 82 F.3d 126 (6th Cir. 1996). The decisions of that circuit hold that ERISA § 1104(d), which simply provides that plan administrators are to discharge their duties "in accordance with the documents and instruments governing the plan," expressly provides the statutory rule for resolving competing claims to insurance proceeds. Indeed, the Sixth Circuit construes this statutory subsection to set forth a "clear mandate" that plan

8

administrators determine the beneficiary with reference to the plan documents, and only the plan documents.  *See **Marsh***, 119 F.3d at 420 ("ERISA itself supplies the rule of law for determining the beneficiary."); ***Pressley***, 82 F.3d at 130 (Section 1104(d) establishes "a clear mandate that plan administrators follow plan documents to determine the designated beneficiary."); ***McMillan***, 913 F.2d at 312 (holding that § 1104(d) establishes the exclusive rule for determining beneficiary status).  Thus, under the Sixth Circuit's minority rule, the named beneficiary must always prevail, without regard to any other circumstances or provisions of law.[1]

Hayes relies upon this analysis, as well as the Supreme Court's recent disposition in ***Boggs***, which involved a clear case of conflict preemption in a different context, for the proposition that ERISA precludes any reliance upon federal common law when resolving a dispute between a named ERISA beneficiary and another claimant.  The district court essentially accepted these arguments, holding that the controlling ERISA law was to be drawn directly from ERISA § 1104(a) rather than the federal common law.  The district court repudiated this Court's analysis in ***Brandon***, and

---

[1]   We note in passing that even the Sixth Circuit's application of the minority rule has, at times, been less than enthusiastic. *See **Pressley***, 82 F.3d 126, 130 (6th Cir. 1996) (noting that ***McMillan*** "dictates the disposition of this case," and that the panel was "not free to reject it in favor of some other approach"); ***McMillan v. Parrott***, 913 F.2d 310, 312 (6th Cir. 1990) (setting forth an alternative holding premised upon application of federal common law).

9

opined that it was wrongly decided. The district court likewise relied upon stray language from the Supreme Court's decision in **Boggs** as additional support for the proposition that the federal common law can have no place when determining the beneficiary of an ERISA life insurance policy.

## III.

We conclude that the district court erred. The rule announced by this Court in **Brandon** and recently reaffirmed in **Clift** is the law in this Circuit. Neither the district court nor a panel of this Court is at liberty to change that rule. Moreover, we are not persuaded, in the context of this case and premised upon the arguments made by these parties, that the rule requires any correction.

Section 1104 defines the fiduciary duties owed by the plan administrator to plan participants and beneficiaries. That section does not either expressly or implicitly purport to establish any methodology for determining the beneficiary of an ERISA plan or for resolving competing claims to insurance proceeds. Thus, considered in isolation, § 1104(d) is a very thin reed upon which to find complete conflict preemption with respect to competing claims to life insurance proceeds. While we can certainly appreciate the simplicity of the bright line rule embraced by the Sixth Circuit, that simplicity comes at too great a cost. As we noted in **Brandon**, the law of family relations, which includes an individual's right

10

to expressly apportion property upon divorce, has traditionally been a fairly sacrosanct enclave of state law. *See* **Brandon**, 18 F.3d at 1327. Similarly, the Sixth Circuit's bright line rule that a beneficiary designation cannot be challenged would supplant what is a fairly uniform set of state laws providing that a named beneficiary who kills a plan participant in order to obtain the plan benefits is not entitled to recover those proceeds. *See* **Emard**, 153 F.3d at 959 n.11 (noting that forty-four states and the District of Columbia have such laws in effect). While ERISA § 1144(a) requires the conclusion that the state law governing such matters is itself preempted when it relates to an ERISA plan, we have no trouble concluding, as have many of the courts that have addressed the issue, that the traditional deference given to state law in these areas supports our decision to borrow from state law when determining the federal common law that should control such claims. *See*, *e.g.*, **Clift**, 2000 WL 373981 at *3; **Mohamed**, 53 F.3d at 913; **Brandon**, 18 F.3d at 1325. In sum, ERISA is broad enough in its preemptive scope to accomplish the purposes of ERISA; namely the imposition of adequate safeguards with "respect to the establishment, operation, and administration" of employee benefit plans for the benefit of ERISA plan participants and beneficiaries. *See* 29 U.S.C. § 1001(a). There is no additional need to breathe imaginary preemptive effect with respect to competing claims for life insurance benefits into general provisions addressing another

11

topic altogether.

Neither is a contrary approach required by **Boggs**.  In **Boggs**, two parties asserted competing claims to the pension benefits of one Isaac Boggs after his death in 1989.  Boggs' sons from a prior marriage claimed entitlement to the pension benefits by virtue of their deceased mother's testamentary transfer of her state law community property interest in Boggs' undistributed pension benefits.  Boggs' surviving wife claimed entitlement to the pension benefits by virtue of ERISA § 1055, which mandates that covered pension plans protect the interests of surviving spouses by providing benefits in the form of a qualified joint and survivor annuity, and ERISA § 1056, which provides that the benefits due under a covered pension plan are inalienable and unassignable, absent a qualified domestic relations order (QDRO) meeting certain statutory requirements.

Recognizing that **Boggs** was positioned "at the intersection of ERISA pension law and state community property law," 117 S. Ct. at 1760, the Supreme Court held that "[t]he surviving spouse annuity and QDRO provisions, which acknowledge and protect specific pension plan community property interests, give rise to the strong implication that other community property claims are not consistent with the statutory scheme," 117 S. Ct. at 1763. The Supreme Court noted that Congress significantly strengthened the specific statutory protection afforded surviving spouses against competing

12

interests by amending the statute in 1984. *See id*. at 1761. The Supreme Court then employed a conflict preemption analysis to hold that Louisiana community property law permitting a testamentary transfer of a former spouse's community property interest in the undistributed pension benefits of her former spouse, who remarried prior to death, was completely preempted by contrary provisions of ERISA that were plainly intended to provide an income stream to surviving spouses that was both inalienable and immune to competing interests absent compliance with the specific statutory framework for preserving such interests with a QDRO. *See id*. at 1763-66.

Hayes maintains, and the district court at least implicitly held, that *Boggs* somehow undermines this Court's analysis and reliance upon federal common law in *Brandon*. We disagree. The principles at work in *Boggs* are clearly inapplicable in this case. As an initial matter, this case does not involve either pension benefits or the express provisions of ERISA ensuring special protection to surviving spouses in the context of pension benefits. Both ERISA § 1055 and ERISA § 1056 are facially limited in application to pension plans, and neither section purports to have any application with respect to competing claims to benefits under a non-pension employee welfare plans, such as the life insurance policy at issue here. *See* 29 U.S.C. §§ 1055, 1056; *see also Brandon*, 18 F.3d at 1324 (characterizing employer-provided life insurance policies as "welfare plans" within the meaning of 29

13

U.S.C. § 1002(1)). Of equal importance, this case does not involve the assertion of any community property interest. Hayes is not asserting a community property interest. To the contrary, Hayes is the designated beneficiary under the plan. For that reason, those ERISA provisions that have been construed to protect those interests of a former spouse that are inconsistent with plan documents or other ERISA provisions, provided those interests are preserved in a QDRO, are simply inapplicable to this dispute.[2] Likewise, the estate does not claim entitlement on the basis of a community property interest. Rather, the estate seeks to void West's designation of beneficiary by virtue of the statutory presumption erected by Texas Family Code § 9.301, and then to rely instead upon Texas law governing the distribution of assets in the absence of such a designation. As should be apparent, *Boggs* dealt with a clearly distinguishable situation involving explicit ERISA provisions addressing an issue plainly within the express regulatory provisions of the statute. In sum, we are not persuaded

---

[2] The district court seems to have confused these facts in its written decision. For example, the district court recognized that the statutory provisions protecting surviving spouses were inapplicable here, although it premised that observation upon the fact that West did not remarry, rather than upon the fact that Manning's claims do not involve pension benefits. Similarly, the district court noted that ERISA generally requires that a former spouse preserve his or her interest in plan benefits by obtaining a QDRO, but noted that Hayes' non-compliance with those provisions could be excused in this case, not because she is the named beneficiary who has no need to preserve her consistent interest, but because West did not choose to remarry in the month following the date upon which his divorce decree became final.

14

that **Boggs** requires any more expansive view of the discrete ERISA preemption issue presented in **Brandon**.

The district court's broad reliance upon § 1104 for the proposition that ERISA expressly requires payment to a named beneficiary without regard any other circumstances and without resort to federal common law reflects nothing more than an inappropriate reliance upon the Sixth Circuit's minority position, which has been soundly rejected by this Circuit and a majority of other circuits to consider the issue. Similarly, the district court's reliance upon **Boggs** is without support; **Boggs** does not provide any rule of law that may be applied to this case. For the foregoing reasons, we conclude a reconsideration of the legal principles set forth in **Brandon** and recently reaffirmed in **Clift** is neither appropriate nor desirable.

## IV.

Having ascertained that our Circuit follows the majority approach by applying federal common law to disputes between a non-beneficiary claimant and the named ERISA beneficiary to life insurance proceeds, and that neither the express language of ERISA nor the Supreme Court's decision in **Boggs** require that we abandon that approach, we must now determine the content of the applicable federal common law.

Manning correctly notes that federal common law may be determined by reference to analogous state law. *See **Wegner v.***

15

*Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997); *Sunbeam-Oster Co., Inc. Group Benefits Plan for Salaried and Non-Bargaining Hourly Employees v. Whitehurst*, 102 F.3d 1368, 1374 n. 18 (5th Cir. 1996); *Jones v. Georgia Pacific Corp.*, 90 F.3d 114, 115 (5th Cir. 1996); *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451 (5th Cir. 1995). Manning then argues on behalf of the estate that this Court incorporated the requirements of the Texas redesignation statue, Texas Family Code 9.301, into the federal common law in *Brandon*.

We disagree. While it is true that we used the Texas statute as a starting point, holding that we would "adopt the Texas rule creating a presumption of waiver absent redesignation following divorce," *Brandon*, 18 F.3d at 1326, we recognized that "wholesale adoption of the Texas redesignation statute" would not "sufficiently protect the interests of [ERISA] beneficiaries," *id*. at 1326. We therefore modified that rule by requiring that any waiver by a designated beneficiary of ERISA life insurance proceeds be "explicit, voluntary, and made in good faith." *Id*. at 1327. Moreover, we measured the adequacy of the asserted waiver under this modified standard with reference to the existing federal, rather than state, common law. *See Brandon*, 18 F.3d at 1326-27 (discussing *Lyman Lumber Co. v. Hill*, 877 F.2d 692 (8th Cir. 1989) and *Fox Valley & Vicinity Constr. Workers Pension Fund*, 897 F.2d 275 (7th Cir. 1989)). We therefore reject Manning's argument that

16

***Brandon*** necessarily requires a result in favor of the estate because we incorporated the Texas redesignation statute into the federal common law when deciding that case. To the contrary, whether the estate is entitled to the proceeds of the life insurance policy must be determined with reference to the express contractual language purporting to establish Hayes' waiver, as well as any other factual circumstances bearing upon whether that waiver was intentionally and voluntarily made in good faith. *See* ***Brandon***, 18 F.3d at 1322, 1327 (discussing divorce decree provisions as well as other facts bearing upon the issue of waiver).

## V.

***Brandon*** provides the rule of federal common law applicable to this dispute. That rule is that a named ERISA beneficiary may waive his or her entitlement to the proceeds of an ERISA plan providing life insurance benefits, provided that the waiver is explicit, voluntary, and made in good faith. The final question requiring our consideration is whether Hayes in fact waived her beneficiary status.

There does not appear to be any issue relating to whether the parties acted voluntarily or in good faith when signing the prenuptial agreement that is made the basis of Manning's waiver argument. To the contrary, the sole issue appears to be whether the express provisions of that agreement establish Hayes' explicit waiver of her status as the named ERISA beneficiary under the Unum

17

policy as a matter of law.

Manning asserts that Hayes waived her interest in the policy as a matter of law by signing the prenuptial agreement, which was later made the basis of the property division ordered by the divorce decree. Hayes responds that the prenuptial agreement is incompetent to waive her interest in the policy because it was executed prior to the creation of her interest as a designated beneficiary and because the document does not explicitly waive her interest in either West's employee benefit plans or the Unum policy in particular.

In deciding this issue, we are guided by the treatment given analogous waiver language in the existing precedent. In **Brandon** and **Clift**, we held that former spouses effectively waived their interest in the proceeds of ERISA life insurance policies by virtue of explicit language appearing in the divorce decrees. In **Brandon**, the divorce decree expressly divested the former spouse of any interest in or claim to:

> Any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights relating to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of Petitioner's past, present, or future employment.

**Brandon**, 18 F.3d at 1323. In **Clift**, a more obvious case of waiver, the divorce decree expressly divested the former spouse of any

18

interest in or claim under "any and all policies of life insurance (including cash value) insuring the life" of her former husband. *Clift*, 2000 WL 373981 at *4.

Although neither case technically involves life insurance benefits, we have likewise invoked the Eighth Circuit's decision in *Lyman Lumber v. Hill*, 877 F.2d 692 (8th Cir. 1989), and the Seventh Circuit's decision in *Fox Valley & Vicinity Constr. Workers Pension Fund*, 897 F.2d 275, 278 (7th Cir. 1989), when measuring the adequacy of an alleged waiver of beneficiary status under federal common law. *See Brandon*, 18 F.3d at 1326.

In *Lyman Lumber*, a former spouse, who was also the named beneficiary, claimed benefits under her deceased husband's ERISA profit-sharing plan. Her claim was opposed by a contingent beneficiary, who relied upon the terms of the divorce decree, which provided that the husband would "have as his own, free of any interest" of the former spouse, "his interest in the profit-sharing plan of his employer." *Lyman Lumber*, 877 F.2d at 693. The Eighth Circuit held that the divorce decree was adequate to divest the former spouse of any shared ownership interest under the profit-sharing plan, but that the divorce decree was not adequate, absent specific language mentioning the beneficiary interest, to divest the former spouse of her status as plan beneficiary. *See id*. at 693-94. Thus, the *Lyman Lumber* court found no waiver.

In *Fox Valley*, a former spouse, who was also the named

19

beneficiary, claimed entitlement to the proceeds of a lump sum death benefit under the deceased participant's ERISA pension plan. Her claim was opposed by the participant's mother, who claimed that the former spouse had waived her interest in the pension plan by virtue of language in the divorce decree, which provided:

> The parties each waive any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party.

*Fox Valley*, 897 F.2d at 277. The *Fox Valley* court held that the preceding language was adequate to waive the former spouse's interest in the lump sum death benefits payable pursuant to the deceased participant's pension plan. *Id*. at 282.

Underlying the result in each of these cases is a focus upon the specificity or explicitness of the language used to affect the alleged waiver. *Clift* presents the easiest case, given that the former spouse expressly waived any interest in life insurance policies insuring the life of her former husband. The case is also instructive because in *Clift*, we did not distinguish between an interest in the life insurance policy and beneficiary status under that policy, as the Eighth Circuit did in *Lyman Lumber*. Indeed, *Clift* expressly declined the Seventh Circuit's lead in this regard, by rejecting a former spouse's invitation to hold that magic words, such as a right to "proceeds" or a "beneficiary interest" must be included in a valid waiver. The Court explained that, while waiver will not be presumed in the absence of fairly explicit language

20

setting forth the waiver, neither is any particular formulation required. *See* **Clift**, 2000 WL 373981 at *3-4. Rather, the Court clarified that the Court "will only find waiver if, upon reading the language in the divorce decree, a reasonable person would have understood that" the beneficiary was "waiving [his or] her beneficiary interest in the life insurance policy at issue." **Id**. at *4. **Brandon** and **Fox Valley** serve as examples of less obvious, but nonetheless adequate, waivers. In both of those cases, the courts were persuaded by divorce decrees that explicitly divested the former spouse of any interest arising from the employment of the participant spouse. Thus, although we must eschew any mechanistic formulation of the language required to cause a valid waiver, the inclusion of language explicitly divesting a former spouse of an interest in any and all employee benefit plans of the other is probably sufficient to support an alternative beneficiary's claim that the former spouse waived his or her beneficiary status.

Applying these principles to this case, we find no waiver. The prenuptial agreement was executed prior to the time that Hayes was designated as beneficiary under the policy. The clear purpose of the document, as reflected by the title, was to define and provide for the preservation of separate property brought to the marriage. The broad language waiving West's and Hayes' interests in the other's "property" does not in any manner either explicitly

21

or implicitly contemplate waiver of a subsequently acquired beneficiary interest in a life insurance policy.

Manning suggests that the prenuptial agreement was incorporated into the divorce decree, such that the terms of that agreement were revived and applied to the parties' then-existing interests. We disagree. As an initial matter, the divorce decree does not purport to incorporate or revive the terms of the prenuptial agreement. To the contrary, the divorce decree provides that there is no community property to be divided aside from personal effects, and that that property would be awarded to the person in possession. The divorce decree then provides that the foregoing division, i.e. that each party retained their own personal effects, was made pursuant to the Separate Property Preservation and Definition Agreement. The divorce decree does not provide that either West's or Hayes' interests were otherwise being divided in accordance with that agreement.

Moreover, even if we agreed that the divorce decree effectively divides the parties' after-acquired interests in accordance with the prenuptial agreement, we would still find no waiver here. While the prenuptial agreement is broadly drafted, there is nothing in that agreement either implicitly or explicitly addressing either insurance or employee benefits. Likewise, and as set forth above, there is nothing in the agreement that would have placed a reasonable person on notice that Hayes was waiving her after-acquired beneficiary interest in the Unum life insurance

22

policy.  *See **Clift***, 2000 WL 373981 at *4.

To conclude, we have not found any cases holding that an agreement negotiated prior to marriage for the purpose of defining and preserving separate property is effective to negate an insured spouse's subsequent and voluntary decision to designate the other spouse as a named beneficiary under an ERISA plan.  We do not say that such an agreement would never suffice, but something substantially more than the tangential and obscure references to each of the parties "property" rights would have to be present to support a finding of waiver.  The divorce decree in this case is likewise inadequate to revive the preclusive effect of the agreement, if any.  The divorce decree relies upon and invokes the agreement solely for the purpose of clarifying that there is no community property and therefore no property to be divided by the family court.  The divorce decree does not purport to revive the various provisions of the agreement for the purpose of precluding Hayes' claim to benefits pursuant to her status as the designated beneficiary of West's life insurance policy.  For these reasons, we find no waiver of Hayes' interests, and affirm the district court's holding that Hayes is entitled under ERISA and subject to the terms of the plan to recover the proceeds of the Unum life insurance policy.

## CONCLUSION

The district court is affirmed.

23