United States Court of Appeals,

Fifth Circuit.

No. 92-9064.

Wanda Sue BRANDON, Plaintiff-Appellant,

v.

The TRAVELERS INSURANCE COMPANY, and Abbott Laboratories, Abbott Laboratories, Inc., Defendants-Appellees.

April 20, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, JONES,[*] and DUHÉ, Circuit Judges.

GOLDBERG, Circuit Judge:

Richard Brandon designated his wife, Wanda Sue Brandon, as the beneficiary on a life insurance policy taken out by his employer, Abbott Laboratories ("Abbott"). The Brandons subsequently divorced. The divorce decree provided that each spouse would separately retain his or her own employment benefits. Richard did not, however, change the beneficiary designation on the life insurance policy as required by the Summary Plan Documents given to him by Abbott when the policy was established.

Upon Richard's death, a conflict arose as to whether Wanda was entitled to receive his life insurance proceeds. When Abbott refused to pay the insurance proceeds, Wanda filed this suit in federal court against Abbott and Travelers Insurance Company ("Travelers"), the insurance company from whom Abbott had purchased

[*]Judge Jones did not sit for oral argument due to illness but will participate in the opinion with the aid of the tape recording.

Richard's policy. The district court entered summary judgment against Wanda, ruling that the divorce decree was res judicata as to her rights to receive the life insurance proceeds. Although we disagree with the district court's reasoning, we affirm the dismissal based on our interpretation of federal common law.

## I. BACKGROUND

Richard and Wanda Brandon had been married for twelve years when, in October of 1986, Richard filed a petition for divorce. During the couple's separation but prior to finalizing the divorce, Richard obtained a position with Abbott Laboratories and enrolled in Abbott's life insurance, annuity retirement, and stock option programs. These plans were employee welfare benefit plans governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Despite the pending divorce, Richard designated Wanda as the primary beneficiary under each of the plans.[1] According to Wanda, Richard told her that she would remain the beneficiary on the plans regardless of the divorce.

Although Richard hired an attorney for the divorce proceedings, held on March 30, 1988, Wanda did not retain an attorney of her own. Richard and Wanda agreed to a property division which Richard described to the court at the hearing. Wanda, for her part, signed a waiver of citation and did not appear in front of the divorce court. At the conclusion of the hearing, the judge granted the divorce and accepted the division of property

---

[1]His brother Gary was named as the contingent beneficiary under all of the plans.

agreed to by the parties.

The divorce decree provided that, "Petitioner [Richard] is awarded the following as Petitioner's sole and separate property, and Respondent [Wanda] is divested of all rights, title, interest, and claim in and to such property ... (8) Any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights relating to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of Petitioner's past, present, or future employment."[2]

After their divorce, the Brandons continued to see each other and sustained many mutual social contacts. The Summary Plan Document controlling the disposition of Abbott Laboratories employee benefits, including the life insurance plan, advises employees that "[y]ou can name anyone as your beneficiary and you can change your designation at a later date by completing the appropriate form which is available from and *must* be submitted to your local Personnel or Benefits Office." (emphasis added). Richard never availed himself of the procedures to remove Wanda as the designated beneficiary. In December of 1989, Richard died after a two week illness.

After Richard's death, Abbott sent a letter to Wanda

---

[2]The district court relied on this language when it determined that Wanda could not maintain the present action to force Abbott and Travelers to pay her the life insurance proceeds.

3

confirming that she was the primary beneficiary on the benefits plans. Wanda filled out and returned the various forms sent to her by Abbott. Subsequently, she learned that Gary Brandon, the contingent beneficiary, had received a check for $110,000 from Travelers under Richard's life insurance policy. Abbott had determined that under the Texas Family Code, a life insurance plan participant must redesignate an ex-spouse after divorce in order to maintain that ex-spouse as the designated beneficiary. Tex.Fam.Code Ann. § 3.632 (West 1987). Because Richard had failed to redesignate his wife, Abbott concluded that Wanda could no longer collect the insurance policy proceeds under Texas law. Therefore, Abbott requested that Travelers pay the insurance proceeds to the contingent beneficiary, Gary Brandon.

Wanda instituted this action in the United States District Court for the Northern District of Texas eighteen months later against both Abbott and Travelers to recover the proceeds of the insurance policy and the other benefits arising out of Richard's employment. The district court granted the defendant's summary judgment motion against Wanda on the grounds that the divorce decree was res judicata as to any rights Wanda might have in Richard's employment benefits. This is an appeal from that judgment.[3]

II. DISCUSSION

---

[3]Although Wanda noticed an appeal as to Abbott's denial of all Richard's employment benefits, the only plan with any value was the life insurance. Therefore, we have chosen to focus, in accordance with Wanda's argument on appeal, on the insurance policy proceeds alone.

4

As an initial matter, we note that the Supreme Court in *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), held that when an administrator's denial of benefits is challenged, the decision is reviewed under a *de novo* standard unless the plan gives the administrator discretionary authority as to this decision. In the instant case, the plan requires that the company pay the insurance proceeds to the designated beneficiary unless for specified reasons the administrator determines that the contingent beneficiary should be paid. Because there is no discretionary authority in the administrator's decision, we review the denial of benefits to Wanda Brandon under a *de novo* standard. *See Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114, 1118 (10th Cir.) *cert. denied,* --- U.S. ----, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991) (*de novo* standard applies when plan compels "the company to pay proceeds to the beneficiary of record.")

The district court addressed two principal issues in disposing of the present case. First, the court held that the anti-alienation provision of ERISA did not prevent Wanda from waiving any rights she may have had to her husband's insurance benefits. *Fox Valley & Vicinity Constr. Workers' Pension Fund v. Brown,* 897 F.2d 275, 280 (7th Cir.1990) (en banc), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990).[4] ERISA's

---

[4]We have previously held that "a controversy between good-faith adverse claimants to pension plan benefits is subject to settlement like any other, and that an assignment made pursuant to a bona fide settlement of such a controversy is not invalidated by the anti-alienation provision of ERISA, 29 U.S.C.

anti-alienation provision, 29 U.S.C. § 1056(d)(1), states that, "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." The language of this portion of ERISA applies only to pension plans while the life insurance policy purchased by Abbott on Richard's behalf was a welfare plan under 29 U.S.C. § 1002(1)(A).[5] The anti-alienation provision of ERISA does not, therefore, apply to the present case.

Although the lower court's determination of this question confirms that the anti-alienation provision of ERISA will not prevent a waiver of benefits in the instant case, this holding does not terminate our inquiry. The question remains whether the divorce decree is sufficient to affirmatively deny Wanda of any rights she may have had to Richard's insurance benefits.

The district court addressed this question in its second holding, ruling that the present action to collect the insurance policy benefits was barred by the res judicata effect of Wanda's prior divorce decree. *Baxter v. Ruddle,* 794 S.W.2d 761, 762 (Tex.1990) (final divorce judgment precludes a collateral attack on the divorce court's disposition of property even if the divorce decree improperly divides the marital property). We decline to

_____

§ 1056(d)(1)." *Stobnicki v. Textron, Inc.,* 868 F.2d 1460, 1465 (5th Cir.1989).

[5] 29 U.S.C. § 1002 provides that the "terms "employee welfare benefit plan' and "welfare plan' mean any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise ... benefits in the event of sickness, accident, disability, [or] death."

6

reach the substantive merits of this holding because we are persuaded that under federal common law, the divorce decree was an effective waiver of Wanda's rights.

The district court failed to confront the question of whether Texas law will govern the designation of an ERISA plan beneficiary under these circumstances or whether any such law would be preempted by ERISA. Because the case law in this area is clear, we proceed to an analysis of the questions raised by ERISA preemption.

The difficult circumstances presented by the facts of the present case have been confronted with surprising frequency by a variety of our sister circuits. While these issues have not been previously faced by this court, we find some consistency in the treatment afforded by other circuits.

Appellees contend that the Texas Family Code requires a re-designation of an ex-spouse after divorce in order to maintain the ex-spouse as the designated beneficiary on a life insurance policy. Tex.Fam.Code Ann. § 3.632 (West 1987). In the instant case, for this redesignation statute to apply of its own accord, however, it must survive the wide preemptive sweep of ERISA.

Congress mandated that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). The Supreme Court has held that "the express pre-emption provisions of ERISA are deliberately expansive, and designed to "establish pension plan regulation as exclusively a federal concern.' " *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45-46,

7

107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)).  In *Shaw v. Delta Air Lines Inc.,* the Court clarified the meaning of the "relates to" language of the statute by stating that a "law "relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  463 U.S. 85, 96-97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983);  *see also Rodriguez v. Pacificare of Tex., Inc.,* 980 F.2d 1014, 1017 (5th Cir.) *cert. denied,* --- U.S. ----, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993).  ERISA will be found to preempt a related state law even where the state law is not specifically intended to regulate ERISA covered plans. *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990).

Without exception, courts have held that ERISA preempts the application of state law under the circumstances of this case. Facing a situation similar to the one under consideration here, the Sixth Circuit held that the "designation of beneficiaries plainly relates to these ERISA plans, and we see no reason to apply state law on this issue." *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990);  *see also Brown v. Connecticut General Life Ins. Co.,* 934 F.2d 1193, 1195 (11th Cir.1991) (citing *McMillan* for the proposition that "[t]he determination of the beneficiary of the proceeds of an insurance policy plainly relates to an employee benefit plan").  The Second, Seventh, and Eighth Circuits have all made similar decisions finding that the designation of

8

beneficiaries is well within the area of state law preempted by ERISA. *Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 15 (2nd Cir.1993); *MacLean v. Ford Motor Co.,* 831 F.2d 723 (7th Cir.1987); *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir.1989). We agree with the reasoning of these cases and hold that the designation of a beneficiary "relates to" the provision of an ERISA plan to a sufficient degree to be preempted by that statute.[6]

Having passed upon preemption, we next move to the second step in the determination of a parties' rights in an ERISA plan. Because we have determined that state law is preempted in this case, we must now ascertain the law that is applicable to the controversy. Therefore, we "look to either the statutory language or, finding no answer there, to federal common law which, if not clear, may draw guidance from analogous state law." *McMillan,* 913 F.2d at 311. Courts that have faced the issues presented by this case have split as to whether ERISA itself supplies the rule of law or whether judges must look to federal common law for the controlling principles.

The Sixth Circuit in *McMillan* decided that Section 1104(a)(1)(D) of ERISA specifically addressed the instant situation. *McMillan,* 913 F.2d at 311-12. That section requires

---

[6]Because our interpretation of federal common law provides a satisfactory resolution of the issues of this case, we find it unnecessary to determine whether the divorce decree here is exempted from the pre-emption provisions of ERISA as a qualified domestic relations order ("QDRO"). 29 U.S.C. § 1056(d)(3)(B)(i)(I). *See Carland,* 935 F.2d at 1120 (QDRO exception will apply to exempt both pension and welfare benefit plans from ERISA preemption).

9

that a plan administrator administer the plan "in accordance with the documents and instruments governing the plan...." 29 U.S.C. § 1104(a)(1)(D) (1985). The *McMillan* court held that Section 1104 of ERISA is clear in requiring that plan administrators follow the plan documents and therefore the court in that case required the administrator to follow the plan documents in making beneficiary designation determinations. The ex-husband in *McMillan,* as here, never removed his former wife as the designated beneficiary on his ERISA profit-sharing plan and a conflict arose between the plan documents requiring all changes be filed with the plan administrator and the divorce decree divesting the ex-wife of any interest in the plan. The court held that the "clear statutory command, together with the plan provisions, answer the question; the documents control, and those name [the ex-wife]." *McMillan* at 311-312.

The alternative approach taken by courts faced with a similar problem to the one we face today is to look to federal common law to resolve the question of how beneficiaries are designated. *See Fox Valley* 897 F.2d at 281; *Lyman Lumber,* 877 F.2d at 693. The courts in *Fox Valley* and *Lyman Lumber* asked whether there was a valid, specific waiver of benefits in the divorce decree to which the court, under the auspices of federal common law, could give effect. *Id.*

The *Fox Valley* court looked to state law for guidance in determining whether to give effect to a waiver of benefits through a divorce decree. The court, in fashioning federal common law,

10

looked to Illinois family law which provided that a divorce decree will not effect the pension rights of a designated beneficiary unless the property settlement specifically included a termination of those rights. *Fox Valley,* 897 F.2d at 281-82. The *Fox Valley* court held that under Illinois state law, the divorce settlement in that case was sufficient to divest the wife of her rights to her ex-husband's employment benefits. The court asserted that the "ability of a spouse to waive rights to a benefit through a specific waiver in a divorce settlement has been recognized by many [state] courts and we adopt that rule for purposes of ERISA." *Id.* at 281. The Seventh Circuit adopted state law through federal common law and determined that the provision in the divorce decree divesting the wife of her rights to the benefits in question, should be enforced. *Id.*

We find that the federal common law approach outlined by the court in *Fox Valley* to be the most persuasive resolution of the issues of this case. Federal respect for state domestic relations law has a long and venerable history. When courts face a potential conflict between state domestic relations law and federal law, the strong presumption is that state law should be given precedence:

> The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law.... This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern.

*De Sylva v. Ballentine,* 351 U.S. 570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956) (citations omitted).

The law of family relations has been a sacrosanct enclave,

11

carefully protected against federal intrusion. One way our federalist system maintains the integrity of the folkways and mores of localities is through the conservation of state control over the creation and separation of families. We do not, however, mean to infer that this sacrosanctity should be impenetrable.

In this case, as urged by Abbott, we adopt the Texas rule creating a presumption of waiver absent redesignation following divorce. Tex.Fam.Code Ann. § 3.632. However, in looking to state family law for guidance, we recognize that wholesale adoption of the Texas redesignation statute will not sufficiently protect the interests of beneficiaries. Thus, in our fashioning of federal common law, we modify the adoption of state law to require that any waiver be voluntary and in good faith. Our approach is bolstered by *Lyman Lumber* in which the Eighth Circuit took a similar tact in utilizing a modified state law to breathe life into the federal common law.

In that case the court concluded that a divorce decree which stated that the husband "shall have as his own, free of any interest of [his ex-wife], his interest in the profit-sharing plan of his employer" was not sufficient to revoke the wife's interest. 877 F.2d at 693. The *Lyman* court ruled that the wife had not effectively waived her rights to his employment benefits under this language because there were no terms "specifically divesting the spouse's rights as a beneficiary under the policy or plan." *Id.* The holding in *Lyman* is such as to require that courts look with great perspicacity in finding a waiver of benefits by a divorce

12

decree.

In *Fox Valley,* the Seventh Circuit took a similar approach to the waiver. The waiver executed by the wife in the divorce settlement at issue in that case provided that "[t]he parties each waive any interest or claim in and to any retirement, pension, profit-sharing and/or annuity plans resulting from the employment of the other party." 897 F.2d at 277. The court in *Fox Valley* held that "[u]nlike the factual setting in *Lyman,* [the spouses] in the present case signed a voluntary property settlement agreement that included an explicit mutual waiver of any rights each might have had in the other's pension plan." *Id.* at 280.

Thus, we follow the courts in *Fox Valley* and *Lyman Lumber* by requiring under federal common law that any waiver of ERISA benefits be explicit, voluntary, and made in good faith. Although the district court in the instant case did not reach the question of ERISA preemption and therefore never made findings as to whether the decree is the sort of good faith waiver which should be enforced, we are able, from the record as it is before us, to make the required determinations.

The appellant Wanda Brandon has made various allegations as to her lack of knowledge about the specifics of the settlement and as to the fact that she was neither represented by a lawyer during the divorce nor was she present at the divorce proceedings. However, it is clear that it was her choice not to hire an attorney and to stay away from the divorce court. The settlement was quite generous to her interests as she received a considerable portion of

13

the community estate, including both the house and car jointly owned by the Brandons. Her representations simply are insufficient to raise a genuine issue as to the voluntary nature and good faith basis of the waiver, and, we therefore find no reason to alter the judgment in this case.

Factually, the situation of this case is not unusual to the experience of the nation's divorce courts. Parties in divorce litigation often trade and exchange their property with one another. The state courts of our country often oversee the type of agreement signed by the Brandons, which, in the ordinary case, offer sufficient protection of the rights of the parties. The oversight of the family courts is suitably armored to protect the rights at stake in this case and we find the approach of this opinion preferable to asserting that ERISA should act as a surrogate law of divorce.

The divorce decree was a bona fide waiver of her rights to the insurance policy proceeds and we are bound to carry out the provisions of the agreement signed by the parties. We find that summary judgment was the proper disposition of Wanda Brandon's suit and although our reasoning may differ, we find no objection to the result.

### III. CONCLUSION

The order granting summary judgment is AFFIRMED.

14