METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,

v.

Donald Glenn PALMER, Dale R. Wallace, Patsy R. Gardner, and Lonnie Rannals, Defendants.

C.A. No. 1:01–CV–555.

United States District Court, E.D. Texas, Beaumont Division.

Sept. 11, 2002.

Linda Gail Moore, Paul E. Ridley, John B. Rizo, Sr., Kirkpatrick & Lockhart, Dallas, TX, for Plaintiff/Counter–Defendant.

Zeb Davidson Zbranek, Zbranek Firm, PC, Liberty, TX, for Defendant/Cross–Claimant/Cross–Defendant.

Donald W. Duesler, Donald W. Duesler & Associates, Marc P. Henry, Henry & Fuller, Beaumont, TX, for Defendant/Counter–Claimant/Third–Party Plaintiff/Cross–Claimant.

Scott Masur McElhaney, Jackson Walker, Dallas, TX, Frank George Vlahakos, Jackson Walker, LLP, Houston TX, for Third–Party Defendant.

### OPINION AND ORDER DENYING DEFENDANT, DALE R. WALLACE'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT DONALD GLENN PALMER'S MOTION FOR SUMMARY JUDGMENT

SCHELL, District Judge.

This matter is before the court on dual motions: "Defendant, Dale R. Wallace's Motion for Summary Judgment" [Dkt. # 25], filed by Dale R. Wallace ("Wallace") on May 23, 2002, and "Defendant Donald Glenn Palmer's Motion for Summary Judgment" [Dkt. # 29], filed by Donald Glenn Palmer ("Palmer") on July 24, 2002.

Upon consideration of the motions, responses, and applicable law, the court is of the opinion that Wallace's Motion for Summary Judgment should be DENIED, and Palmer's Motion for Summary Judgment should be DENIED.

## I. BACKGROUND

Brenda K. Palmer Wallace (hereinafter "the Decedent") was a participant in the AT & T group life insurance plan ("the Life Plan") and the AT & T supplementary life insurance plan ("the Supplementary Plan") (collectively "the Plans") for employees of AT & T. On November 5, 1986, Decedent named her then-husband, Palmer, as the primary beneficiary and her mother, Patsy R. Gardner, as the contingent beneficiary. On or about December 27, 1995, Decedent and Palmer divorced in the State of Texas. Wallace alleges that according to the final decree of divorce, Decedent was awarded as her sole and separate property her life insurance policy. On October 2, 1996, Decedent allegedly submitted a change of beneficiary designation form to AT & T, designating Wallace as primary beneficiary and Lonnie Rannals as contingent beneficiary and trustee of an unidentified trust. MetLife allegedly attempted only once to return the change of beneficiary form to Decedent for problems regarding information included in Decedent's change of beneficiary designation form. On April 10, 1998, Decedent married Wallace. On January 16, 2000, Decedent died and life insurance benefits in the amount of $36,000 for the Life Plan and $180,000 for the Supplementary Plan (collectively the "Plan Benefits") became payable. Subsequent to the Decedent's death, both Wallace and Palmer submitted claims for the Plan Benefits to MetLife. On September 11, 2000, MetLife submitted a letter to Palmer and Wallace, stating that Palmer's claim based on the November 1986 beneficiary designation and Wallace's

claim based on the December 27, 1995 divorce decree were adverse to one another. Therefore, according to Wallace, Met-Life stated that it was required to initiate an interpleader action, unless a sufficient compromise could be reached between the two parties. On October 10, 2000, an agreement was submitted to MetLife in which Palmer allegedly waived any and all rights to the life insurance benefits of Decedent, agreed that all benefits should be made payable to Wallace, and released any and all claims against MetLife, AT & T and the Employee Life Benefit Plan. On May 16, 2001, MetLife forwarded a "Release and Assignment" to be executed by Palmer, which set forth the terms of the October 10, 2000 agreement. This "Release and Assignment" was forwarded to Palmer by Wallace's attorney on May 17, 2001. On June 7, 2001, Palmer allegedly attempted to revoke his October 10, 2000, waiver and assignment and reinstate his claim for the Plan Benefits. On August 13, 2001, MetLife tendered $154,000 into the registry of the court and filed its complaint as an interpleader.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *See id.* at 248, 106 S.Ct. 2505. The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See id.* at 247, 106 S.Ct. 2505. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In this instance, the movant is not required to offer evidence to negate the nonmovant's claims. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 175–76 (5th Cir.1990). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.*

## III. ANALYSIS

Wallace asserts that federal law dictates that this case is controlled by federal com-

mon law. As such, Wallace is entitled to summary judgment because the evidence shows that Palmer waived any ownership or beneficiary interest in the Plan Benefits upon execution of the divorce decree. In addition, Wallace claims Palmer cannot raise any genuine issues of material fact regarding his alleged waiver.

The Employee Retirement Income Security Act ("ERISA") includes broad pre-emption provisions. ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). The Supreme Court expounded upon the meaning of "relates to" in the statute by stating that a "law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

■ The Fifth Circuit has addressed the issue of what law governs when a state statute is preempted by ERISA. In *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321 (5th Cir.1994), the Fifth Circuit ruled on a case very similar to the case at hand. The former wife of the deceased brought a suit seeking the proceeds of deceased's life insurance policy. After the district court entered summary judgment against the former wife, she appealed. The Fifth Circuit affirmed. *See id.* at 1327. The court addressed two issues. After affirming the district court's ruling that the anti-alienation provision of ERISA does not apply to the present case, the court moved on to the issue of whether the divorce decree acted as a waiver of the former wife's rights to the decedent's life insurance benefits. *See id.* at 1324. The court found that ERISA preempted the application of state law in this context. *See id.* at 1325. Next, the court addressed the key issue,

"whether ERISA itself supplies the rule of law or whether judges must look to federal common law for the controlling principles," noting that circuit courts have been split on the issue. *Id.* The court found that federal common law should be applied. *See id.* at 1326. In deciding to apply federal common law, the court was mindful of the historical deference given by the courts to state family law. "The law of family relations has been a sacrosanct enclave, carefully protected against federal intrusion. One way our federalist system maintains the integrity of the folkways and mores of localities is through the conservation of state control over the creation and separation of families." *Id.*

Fashioning federal common law, the court created a rule of presumption of waiver absent re-designation following divorce, provided the waiver is explicit, voluntary and in good faith. *See id.* Applying federal common law to the facts of the case, the court found the divorce decree to be a bona fide waiver of the former wife's rights to the insurance policy proceeds, and affirmed the lower court judgment. *See id.* at 1327. The Fifth Circuit continues to apply the rule of federal common law enunciated in *Brandon. See Manning v. Hayes*, 212 F.3d 866, 871–72 (5th Cir. 2000); *Clift v. Clift*, 210 F.3d 268, 270–72 (2000).

The Supreme Court recently addressed the issue of ERISA pre-emption in the case of *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). In *Egelhoff*, the Supreme Court held that ERISA pre-empted a Washington state statute providing for automatic revocation upon divorce of the designation of a former spouse as beneficiary of a non-probate asset. *See Egelhoff*, 532 U.S. at 143, 121 S.Ct. 1322. The Court identified two primary instances by which the state statute had an impermissible connection to

ERISA plans. First, "[t]he statute binds ERISA plan administrators to a particular choice of rules for determining beneficiary status.... The statute thus implicates an area of core ERISA concern. In particular, it runs counter to ERISA's commands that a plan shall 'specify the basis on which payments are made to and from the plan,' § 1102(b)(4), and that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' § 1104(a)(1)(D), making payments to a 'beneficiary' who is 'designated by a participant, or by the terms of [the] plan.' § 1002(8)." *Id.* at 147–48, 121 S.Ct. 1322. In rejecting the Washington state statute, the Court noted that uniformity, one of the principle goals of ERISA, would be impossible "if plans are subject to different legal obligations in different States." *Id.* at 148, 121 S.Ct. 1322. Discussing the presumption against preemption in family law and probate law, the Court noted, "that presumption can be overcome where, as here, Congress has made clear its desire for preemption." *Id.* at 151, 121 S.Ct. 1322.

Although the Court's holding in *Egelhoff* was limited to the preemption of a state statute providing for automatic revocation of beneficiary designation upon divorce, the logical inconsistencies between *Egelhoff* and the Fifth Circuit's federal common law approach have been noted. Of the three Texas state court cases to have interpreted *Egelhoff,* two have noted this inconsistency. In *Barnett v. Barnett,* 67 S.W.3d 107 (Tex.2001), the Texas Supreme Court noted that *Egelhoff* did not expressly resolve the division among the circuits with regard to whether federal common law or ERISA itself governed in cases of preemption. *Barnett,* 67 S.W.3d at 122. However, after reviewing the United States Supreme Court's holding in *Egelhoff,* the Court stated,

> In the face of this reasoning, we are constrained to conclude that federal common law would not be crafted to permit community property law to provide a means for a spouse to effectively negate the beneficiary designation made under an ERISA plan. It is for the United States Supreme Court, not this Court, to draw a distinction between the statute at issue in *Egelhoff* and state community property laws. Unless and until the Supreme Court does so, we must apply the rationale in *Egelhoff.*

*Barnett,* 67 S.W.3d at 125. In *Heggy v. American Trading Employee Retirement Account Plan,* the court reversed the trial court's granting of summary judgment for the decedent's wife and against decedent's ex-wife pertaining to the award of retirement account funds at the time of the participant's death. 56 S.W.3d 280, at 286 (Tex.App.-Houston [14th Dist.]) 2001, no writ. After reviewing the *Egelhoff* decision, the court stated,

> [w]hile the Court recognized that a presumption against pre-emption exists in areas of traditional state regulation such as family law, it reasoned that '[this] presumption can be overcome where, as here, Congress has made clear its desire for preemption.' [*Egelhoff,* 532 U.S. at 151, 121 S.Ct. 1322.] Such language, we feel, casts doubt on the Fifth Circuit's practice of adopting federal common law for designation of beneficiary issues.

*Heggy,* 56 S.W.3d at 285. In light of *Egelhoff,* doubt exists as to whether the federal common law approach of the Fifth Circuit should continue to be applied upon a determination that ERISA preemption is proper.

Palmer's Motion for Summary Judgment is primarily based on the assertion that the Supreme Court abandoned the rule of *Brandon* in *Egelhoff. Def. Palmer's Mot. for Summ. J.* at 7. The cases are somewhat distinguishable. *Egelhoff* in-

volved a state statute that affected the designation of beneficiaries, while *Brandon* involved a divorce decree that might constitute a waiver under the federal common law. Preemption is needed to prevent "[r]equiring ERISA administrators to master the relevant laws of 50 States." *Egelhoff*, 532 U.S. at 149, 121 S.Ct. 1322. Application of a divorce decree presents much less danger. A divorce decree is entitled to full faith and credit. As such, the choice-of-law fears noted in *Egelhoff* do not exist. *See Egelhoff*, 532 U.S. at 149, 121 S.Ct. 1322. Absent a clear showing that the rule set forth in *Brandon* has been discredited by the Supreme Court, this district court is not at liberty to depart from the established law of the Fifth Circuit. *See Manning*, 212 F.3d at 872 ("The rule announced by this Court in *Brandon* and recently reaffirmed in *Clift* is the law in this Circuit. Neither the district court nor a panel of this Court is at liberty to change that rule.").

■ Applying the federal common law of waiver in the instant case, material issues of fact remain. A waiver of ERISA benefits must be "explicit, voluntary, and made in good faith." *Brandon*, 18 F.3d at 1327. Palmer asserts that no waiver can be established because the divorce decree was by order of a court, not agreed upon by the parties. *Def. Palmer's Mot. for Summ. J.* at 10–11. The divorce decree, unsigned by the parties, states, "[t]he Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party." *Def. Wallace's Mot. for Summ. J., Ex. A, at 3.* The voluntariness of waiver issue constitutes a genuine issue of material fact. Wallace has brought forth evidence to overcome the summary judgment standard.

Therefore, Palmer's Motion for Summary Judgment is DENIED.

■ Wallace asserts that the evidence establishes waiver as a matter of law. *Def. Wallace's Mot. for Summ. J.* at 9. The language in the divorce decree is almost identical to that found in *Brandon*. But, the court in *Brandon* found that the parties had "agreed to a property division which [Decedent] described to the court at the hearing." *Brandon*, 18 F.3d at 1323. Whether the divorce decree in the instant case represents an agreement constitutes a genuine issue of material fact. Palmer has brought forth evidence to overcome the summary judgment standard.

Therefore, Wallace's Motion for Summary Judgment is DENIED.

It is so ORDERED.